(No. 14506.—Reversed in part and remanded.)
ELLA M. WHIPPLE, Appellee, *vs.* MABELLE M. CARRICO
*et al.* Appellants.

*Opinion filed October 21, 1922—Rehearing denied Dec. 7, 1922.*

1. DEEDS—*former existence and contents of lost deeds must be clearly proved—burden of proof.* As deeds are evidence of title, public policy demands that if they be lost the parol proof of their former existence and contents shall be strong and conclusive, and the burden of such proof rests upon the party seeking to establish the deeds.

2. SAME—*what is essential to effective delivery.* A deed, to take effect from delivery, must be clearly shown to have been delivered with the intention that it pass title at that time, and it must be shown that the grantor parted with the control of it with the intention that it become immediately operative.

3. SAME—*a deed of voluntary settlement is presumed to have been delivered—minors.* In the case of deeds executed to effect a voluntary settlement or distribution of property the law presumes a delivery, especially where a minor is made the beneficiary of such settlement, and anyone claiming adversely to such grantee has the burden of showing that there was no delivery.

4. SAME—*when delivery is valid although grantor regains possession of deed.* Where a deed is delivered to a third party to be given to the grantee at the grantor's death, with the understanding that the grantor parts with all control over the instrument, subsequent acts or statements of the grantor cannot affect the delivery or validity of the conveyance; and where the grantor subsequently is permitted to take the deed to copy or correct the description the title of the grantee is not thereby divested, though the deed is not returned and is found among the papers of the grantor after her death.

APPEAL from the Circuit Court of Winnebago county; the Hon. E. D. SHURTLEFF, Judge, presiding.

GARRETT, MAYNARD & HULL, and MORRIS J. HINCH-CLIFF, (SYDNEY A. SHOOP, guardian *ad litem,*) for appellants.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Ella M. Whipple, appellee, filed in the circuit court of Winnebago county her bill for the partition of certain real estate of the estate of Jennie E. Miller, deceased, and to set aside two certain deeds affecting certain portions of the property sought to be partitioned. One of these deeds was executed by Mrs. Miller to appellant William Miller Carrico, and the other to appellant Mabelle M. Carrico. William M. Carrico, a minor, is the grandson of Mrs. Miller and the son of Mabelle M. Carrico. The deed to William was dated June 21, 1909. The deed to Mabelle was dated June 5, 1913, and shows acknowledgment before Gust Peterson, notary public, on June 9, 1913. On October 21, 1913, Mrs. Miller executed her last will, which has been admitted to probate. By it she devised her property, aside from certain other bequests, equally between appellee and Mabelle M. Carrico, who are the daughters and only heirs-at-law of Mrs. Miller. The will does not mention the property described in the deeds to William and Mabelle. It directs that the balance of the real estate (describing it) shall be sold and the proceeds divided as here stated. Earl D. Reynolds, as executor, and Mabelle M. Carrico, answered the bill, denying that the deeds were clouds on the title and alleging that they are valid deeds; that they were made by Mrs. Miller and by her left with Reynolds, who is an attorney at law in the city of Rockford, with directions to deliver them to the grantees upon her death; that there was a valid delivery, and that title passed and was vested by the deeds in the grantees therein named. William M. Carrico, by his guardian, filed a formal answer. Upon hearing of the cause, and after considerable testimony had been introduced, Mabelle M. Carrico took leave to amend her answer and to file a cross-bill. Her answer, as amended, in effect admits, and her cross-bill avers, that the deed to her of June 5, 1913, was not a valid deed, but alleges that on June 21, 1909, the date on which the deed to William M.

Carrico was made, Mrs. Miller executed to her a deed to the same property described in the deed to her of June 5, 1913; that at the time of its execution the deed was delivered to Reynolds, to be delivered to the cross-complainant upon the death of the grantor; that in 1913 Mrs. Miller, with the consent of the complainant, got possession of the deed for the purpose of correcting a certain description pertaining to property adjoining that described in the deed and did not return the same to Reynolds. She alleges, however, that there was a valid delivery of the deed and a vesting of the title at the time of its execution. The chancellor heard the evidence in open court and entered a decree dismissing the cross-bill and setting aside the two deeds as clouds on the title of the appellee and granted partition in accordance with the prayer of the bill.

Appellee's evidence tends to show that on the death of Jennie E. Miller the two deeds sought to be set aside were found in her safety deposit box in the bank where she did banking business. They were recorded by Earl D. Reynolds some time after her death. The depositions of two sisters of the deceased, who lived in Georgia and with whom she spent the winters during the later years of her life, were introduced without other than general objections, and showed that she had stated in their presence that she had made deeds to her grandson, William, and her daughter Mabelle; that she had not delivered them but that she expected to, and appellee contends that this evidence shows that there was no delivery of these deeds, though it is not questioned that she executed them. The evidence of appellants concerning the delivery of the deeds consists almost wholly of the testimony of Reynolds, who states that Mrs. Miller, who was a client of his, requested him in 1908 to make a deed for her conveying certain property to her daughter Mabelle; that he did so on March 10, 1908; that this deed was signed and acknowledged, but Mrs. Miller took it, saying that she had not made up her mind just what she wanted to do about it.

The testimony of Reynolds shows that he explained to her that in order to make a valid deed it would be necessary for her to deliver it out of her possession and control. The property described in this deed is not that in the deed sought to be set aside. The testimony of Reynolds shows that on the 21st day of June, 1909, Mrs. Miller returned to his office, saying that she had made up her mind to deed certain property to her daughter Mabelle and other property to her grandson, William, and that at her request he drew deeds in accordance with her directions. The deed to William is one of the deeds sought to be set aside in these proceedings. The other deed was to the same property described in the deed to Mabelle of June 5, 1913. Reynolds testifies that he explained to Mrs. Miller the necessity for putting these deeds out of her possession with directions as to the delivery of them, and that if she did so she could not get possession of them again; that she said to him that that was what she desired, and she left the deeds with him, with directions to deliver them to the grantees after her death; that he put them in an envelope and put them in his safe. There appears to have been no notation in writing on the envelope in which these deeds were placed and no directions in writing were given as to what was to be done with them. Reynolds testifies that he had both of these deeds in his possession until June, 1913, when Mrs. Miller came to get them for the purpose of correcting the description of adjoining property, but that he told her that she would not be allowed to take them because they had been delivered to him; that she then suggested that she would get the consent of Mabelle to take them out for that purpose, and he told her that it would be proper for her to take the deed executed to Mabelle, with Mabelle's consent, for that purpose but not the deed to William, who was a minor and could not consent; that she replied that she did not need that deed. Reynolds testified that later Mabelle called him up and told him that she consented to her mother taking the deed for the purpose

for which she wanted to use it. There is no contradiction of this testimony. He further testifies that Mrs. Miller came to the office and got the deed with the understanding that she was to return it, but that she did not return it, and after her death he made search for it but was unable to find it. He testified that he did not give her the deed to William. His testimony also is, that after the death of Mrs. Miller he went with appellee and Mabelle to the bank and looked over the papers of the deceased in the safety deposit box, and that he there found the deed to Mabelle dated June 5, 1913; also the deed executed by her conveying other property to Mabelle, dated March 10, 1908; that the deed to William was in his possession at the time Mrs. Miller died and was not in the bank. After appellee's witnesses had testified to seeing the deed to William in the deposit box shortly after the death of Mrs. Miller, Reynolds, apparently having his memory refreshed, went before the chancellor and stated that he desired to correct his testimony, and in that correction testified that he had recalled to mind that Mrs. Miller got the deed to William at the same time she got the deed of the same date to Mabelle.

Appellants admit that the deed to Mabelle of June 5, 1913, which is sought to be set aside, was not delivered and is therefore void, but insist that the deed to her of June 21, 1909, which is here referred to as "the lost deed," was delivered on the day of its execution and remained in the possession of Reynolds for a period of four years, and was then taken by Mrs. Miller only for the purpose of correcting certain descriptions; that there being a valid delivery the title vested at that time. The testimony of Reynolds is that he recorded the deed to Mabelle of June 5, 1913, because it covered the same property as the lost deed, though he knew that the deed of June 5, 1913, was not a valid deed. Gust Peterson, the notary public who took the acknowledgment of Mrs. Miller to the deed of June 5, 1913, stated that she told him that she wanted this deed for the

purpose of including a strip ten or twelve feet wide along
the side of the property which she had deeded to Mabelle.
The cross-bill alleges, and Reynolds testifies, that the lost
deed to Mabelle of June 21, 1909, contained the same de-
scription as the deed of June 5, 1913. He does not explain,
however, why Mrs. Miller desired to draw a deed to Mabelle
including the strip concerning which she spoke to Peterson,
if the original deed contained that strip.

A party seeking to establish the existence and contents
of a lost deed by parol testimony must bear the burden of
making such proof in a clear and conclusive manner. Deeds
are evidences of title. Public policy demands that if they
be lost the proof of former existence and contents should
be strong and conclusive before the court will establish title
to property by parol testimony. (*Shipley* v. *Shipley,* 274
Ill. 506; *Bennett* v. *Waller,* 23 id. 97.) While the evidence
in the record appears to establish that there had been prior
to June 5, 1913, another deed executed by Mrs. Miller to
Mabelle, the proof of its contents is not met with that de-
gree of certainty required to establish title by parol testi-
mony. While the witness Reynolds states unequivocally
that the description was the same in both deeds to Ma-
belle, the testimony of Peterson, the notary, regarding the
fact that Mrs. Miller executed another deed to Mabelle on
June 5, 1913, stating that she wanted to include a certain
strip not included in a deed she had made to her, casts seri-
ous doubt on the matter of the description of the property
contained in the lost deed. This being true, it was not er-
ror on the part of the chancellor to dismiss the cross-bill
and to set aside the deed to Mabelle of June 5, 1913, re-
gardless of what the proof might have been as to delivery
of the deed to her executed on June 21, 1909, if there was
such a deed. There is not sufficient proof of the contents
of the deed to establish title.

Concerning the deed to William M. Carrico, the minor,
the proof of delivery of this deed is the testimony of Rey-

nolds, who states positively that the deed was delivered to him for the grantee, and that the mother sought the consent of Mabelle before taking out the deeds in 1913. It is not disputed that the deed was made to William on June 21, 1909, and there is nothing in the testimony even tending to dispute the statement that Reynolds had it in his possession until 1913. The depositions of the sisters who testified concerning the statements of Mrs. Miller, show that it was not until after 1913 that she made any statements concerning her having possession of the deeds. The rule is that a deed to take effect from delivery must be clearly shown to have been delivered with the intention that it pass title at that time, (*Mitchell* v. *Clem,* 295 Ill. 150,) and it must be shown that the grantor parted with the control of it with the intention that it become immediately operative. (*Weber* v. *Brak,* 289 Ill. 564.) It is also the rule in this State that in case of deeds executed to effect a voluntary distribution or settlement of property the law presumes a delivery, and this presumption is especially strong where a minor is made the beneficiary of such settlement. The burden of proof shifts in such case, and anyone claiming adversely to such grantee has the burden of showing that there was no delivery. *Thurston* v. *Tubbs,* 257 Ill. 465; *DeGraff* v. *Manz,* 251 id. 531; *Riegel* v. *Riegel,* 243 id. 626; *White* v. *Willard,* 232 id. 464; *Miller* v. *Meers,* 155 id. 284; *Douglas* v. *West,* 140 id. 455.

Appellants' evidence shows that Mrs. Miller had said that she desired to deed this property to William M. Carrico because he had taken the Miller name. He was her grandson. It was evident that in making this deed to him she was making a settlement of her property upon him. In such a case the presumption is that the deed was delivered. Appellants contend that the statements of Mrs. Miller thereafter, together with the fact that the deed was found in her possession at the time of her death, overcome this presumption. If there was a delivery of the deed to Reynolds

for the grantee at the time of its execution it does not matter what Mrs. Miller may have said or done subsequent to that time concerning it, although she may have changed her mind and by reason of her statement that she wanted to correct certain lines secured the possession of the deed and held it until her death. Such statements or acts do not have the effect of divesting the title conveyed to the grantee by the deed. *Waters* v. *Lawler,* 297 Ill. 63; *Hudson* v. *Hudson,* 287 id. 286; *Hoyt* v. *Northup,* 256 id. 604; *Thompson* v. *Calhoun,* 216 id. 161.

The testimony of Reynolds is positive that he explained to Mrs. Miller what was necessary to constitute a valid delivery of the deed, and that the deed to William was delivered to him for the grantee and was in his possession under such delivery until 1913, and while he appears to have been mistaken in stating that it was in his possession at the time of her death, there is no contradiction of his testimony that the delivery to him was absolute, nor that she later procured this deed and the deed to Mabelle under the statement that she wanted to correct lines of adjoining property. The proof, therefore, is positive that he held possession of this deed for a period of over four years. Appellants' contention as to the delivery of this deed is also supported by the fact that in making her will in October, 1913, Mrs. Miller omitted this property from the provisions of the will. The depositions of her sisters show that it was not until later than 1913 that she stated to them that she was keeping possession of the deeds. We are of the opinion that the presumption of the delivery of this deed, aided by appellants' evidence supporting it, is not overcome by the proof that the deceased later made statements that she had not delivered this deed and the fact that the deed was found in her possession at the time of her death. It is quite evident from reading the record that it was her intention that William should receive this property, and a review of it convinces us that the appellee has not sustained the burden

put upon her to overcome the presumption of the delivery of the deed. The circuit court, therefore, erred in decreeing that the deed to William M. Carrico be set aside as a cloud on appellee's title.

The decree entered, so far as it dismisses Mabelle M. Carrico's cross-bill and sets aside the deed to her complained of in the original bill, is affirmed. So far as it relates to the deed to William M. Carrico, the decree will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed in part and remanded.*