KENNETH L. ABRAMS, Ex'r of the Estate of Hazel May Turner, Deceased, Plaintiff-Appellee, v. JOHN J. ROYSE *et al.*, Defendants-Appellants.

Fourth District   No. 4—90—0580

Opinion filed April 4, 1991.

Marc J. Ansel and Gregory D. Cozad, both of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellants.

Robert O. Keller and Stephen J. LeSueur, both of Keller & LeSueur, of Champaign, for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

On July 19, 1990, the circuit court of Champaign County entered an order, pursuant to the complaint to quiet title filed by plaintiff Kenneth Abrams, executor of the estate of Hazel May Turner, holding that title to the property in question is properly vested in devisee of plaintiff estate and that defendants, John Royse and Buddy Myers, were to execute a quitclaim deed for said property to said devisee. Defendants now appeal.

This dispute involves a strip of land acquired pursuant to court action in 1867 by the Monticello Railroad Company. Years later, the Monticello Railroad passed its interest to the Illinois Central Railroad. In 1988, this railroad line was abandoned, and on June 6, 1988, defendants acquired the railroad's interest pursuant to a quitclaim deed.

On December 19, 1988, plaintiff filed the instant complaint to quiet title. The question to be litigated was whether the railroad had a fee simple absolute interest in the property which defendants acquired, or whether the railroad had a right-of-way with a reversionary interest in the proper landowner once the railroad no longer used the property. The complaint alleged, and it is uncontested, that decedent was the rightful owner if a reversionary interest existed.

The property in question was acquired by the railroad in a condemnation proceeding in 1867 in Monticello R.R. Co. v. Caldwell (Dec. 11, 1867, Cir. Ct. Champaign Co.), No. 4360 (*Caldwell*). At the time of the action, there were two statutes which are involved in our analysis. The first, effective November 5, 1849, is entitled "An Act to provide for a general system of railroad incorporations" (Laws of Illinois (1849), Incorporations, pars. 1 through 46, at 15-28 (passed by 16th

Ill. Gen. Assem., 2d Sess.) (hereinafter 1849 Act)). The second, effective June 22, 1852, is entitled "An Act to amend the law condemning right of way for purposes of internal improvement" (Laws of Illinois (1852), pars. 1 through 21, at 146-52 (passed by 17th Ill. Gen. Assem., 2d Sess.) (hereinafter 1852 Act)).

In its memorandum of opinion, the court initially concluded the 1849 Act controlled the *Caldwell* decision. Neither party contests this conclusion. The court observed the question of what property interest a railroad acquired pursuant to the 1849 Act had never been decided. After an analysis of the 1849 Act, case law showing the 19th-century view toward railroad right-of-ways and the wording of the order in *Caldwell*, the court concluded that the railroad only acquired a right-of-way for as long as the land was used for railroad purposes, with the land reverting to the original landowner when it ceased being so used. We concur in this conclusion and affirm.

The relevant provisions of the 1849 Act provide that upon entry of an order pursuant to a condemnation proceeding:

"[The railroad] shall become seized in fee of all the lands and real estate described in said [order], as required to be taken as aforesaid, during the continuance of the corporation, by this or any subsequent act, and may take possession of and hold and use the same for the purposes of said road." (1849 Act, par. 22, at 23.)

The ambiguity of this provision is readily apparent. On one hand it states the railroad shall become "seized in fee" of the property which defendants maintain shows a legislative intent to ensure that a fee simple title passed to the railroad. On the other hand, the statute uses the phrases "during the continuance of the corporation" and "may take possession of and hold and use the same for the purposes of said road" (1849 Act, par. 22, at 23), which plaintiff argues should be viewed as limiting language indicating the legislature intended that something less than a fee simple was acquired.

This ambiguity is made clearer by reference to the court documents in *Caldwell*, which appear to be drafted to conform to the statute. The petition indicates the railroad is seeking a "right of way." Commissioners were appointed to ascertain the compensation to be paid for the taking of the "right of way" across the lands, and the commissioners ultimately reported they had determined the proper compensation for the lands "taken for said right of way." However, the decree provides:

"[S]aid Company shall have as and for a right of way and be seized in fee of [land description] ***. *** And it is further or-

dered and adjusted by the Court that said Company may take possession of and hold and use said right of way for the purposes of said road." (Monticello R.R. Co. v. Caldwell (Sept. 3, 1873, Cir. Ct. Champaign Co.), No. 4360, slip op. at 6.)

Thus, most of the language speaks of right-of-ways and contains language which indicates the property is for railroad use, which indicates the railroad acquired an easement with a reverter once the land is no longer used. However, defendants observe that such a construction makes the "seized in fee" language meaningless. To give that phrase meaning, they suggest that something more than an easement is involved.

Initially, it should be noted that one case has commented on the 1849 Act. In *Marathon Oil Co. v. Heath* (7th Cir. 1966), 358 F.2d 34, 36, the court stated: "The [1849 Act] did, however, contemplate the taking of a fee by a railroad for use in the construction of its tracks ***." However, that comment was made in passing and is *dicta*, since that case was controlled by the 1852 Act. Thus, it has little value and adds nothing to this analysis.

Defendants observe that under the 1852 Act when "property was taken and condemned for public use the condemnation was of the entire property, and the assessment of damages was held to be in satisfaction of all the title to the property, including the fee simple and all lesser estates." (*Bartlow v. Chicago, Burlington & Quincy R.R. Co.* (1909), 243 Ill. 332, 336, 90 N.E. 721, 723; see also *Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1945), 392 Ill. 362, 374, 64 N.E.2d 499, 505.) They believe that due to the close proximity in time between passage of the two Acts and similarity in the language, this construction should also control the 1849 Act.

However, we must disagree. We note there is a large difference in the scope of the two Acts. The 1849 Act was limited to railroads, while the 1852 Act was a general condemnation act. Further, the language contained in the acts is not so similar as to conclusively establish, given the differences in their scopes, that the acts are intended to be construed similarly.

The question now before us turns upon the interplay between the concepts that the railroad. became seized in fee of the property and that the railroad acquires only a right-of-way. In attempting to resolve this quandary, we are aware it has long been established in construction of a statute that it is not presumed the legislature intended any part of the statute to be without meaning and, therefore, every part of it must be viewed in connection with the whole, so as to make all the parts harmonize, if practicable. (*Buchanan v. Bartow Iron Co.*

(1878), 3 Ill. App. 191, 196; see also *People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200, 203; *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 419, 444 N.E.2d 211, 215.) While at first blush it appears this will be impossible to do since the concepts appear irreconcilable, we conclude upon further review that this is not so.

In order to resolve this question, it is necessary to review cases in which courts determined what interests railroads acquired pursuant to various deeds. In *Walker v. Illinois Central R.R. Co.* (1905), 215 Ill. 610, 74 N.E. 812, the court was asked to determine what interest the railroad acquired when it purchased the right-of-way. The court explained the nature of railroad right-of-ways as follows:

> "The land contained in the strip was not conveyed to the appellee, but its use. The interest, however, which the appellee acquired in said strip was absolute for the purposes for which it was acquired, so long as it was used for railroad right of way purposes. In *Hazen v. Boston and Maine Railroad Co.* 2 Gray, 574, it was said (p. 580): 'The right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land permanent in its nature and practically exclusive.' And in *Chicago and Mississippi Railroad Co. v. Patchin*, 16 Ill. 198, this court, on page 202, speaking through Mr. Justice Scates, said: 'I presume the right to the land upon which railroads are built is not strictly analogous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes.' And in *Illinois Central Railroad Co. v. Godfrey*, 71 Ill. 500, it was held that the right of way was the exclusive property of a railroad company, upon which no unauthorized person had the right to be for any purpose. And in *Jackson v. R. & B. R.R. Co.* 25 Vt. 150, Mr. Justice Redfield said: 'The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen and the enjoyment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose.'

In *Illinois Central Railroad Co. v Houghton*, 126 Ill. 233, on page 241, where the court was considering a deed very similar to the deed now under consideration, it was said: 'While we are not disposed to hold that the deed from Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of

possession for railroad purposes is concerned, had most of the qualities of the fee.' " *Walker*, 215 Ill. at 615-16, 74 N.E. at 813-14.

In *Illinois Central R.R. Co. v. Houghton* (1888), 126 Ill. 233, 18 N.E. 301, the deed provided that the railroad would acquire " 'the right of way over and through said tract,' " to have and to hold " 'for all lawful uses and purposes incident to a full and indefeasible title in fee simple ***.' " The court, in reaching its decision, explained how a railroad right-of-way gives a railroad more control over the property than a normal easement. (*Houghton*, 126 Ill. at 240-41, 18 N.E. at 303-04.) Ultimately it stated:

> "*While we are not disposed to hold that the deed *** to the [railroad] conveyed to the [railroad] an estate in fee in the right of way*, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee." (Emphasis added.) *Houghton*, 126 Ill. at 241, 18 N.E. at 304.

Thus, it is evident that the right-of-ways railroads procured were more substantial than normal easements, but still less than the entire fee in the property. Of particular interest to our present inquiry is the emphasized language in *Houghton*. This language clearly suggests it is possible for a fee to be in a right-of-way. This point is made more clear in the relatively more recent case of *Tallman v. Eastern Illinois & Peoria R.R. Co.* (1942), 379 Ill. 441, 41 N.E.2d 537.

In *Tallman*, the court was asked to address the impact of a deed which conveyed property to the railroad " 'as and for its right of way ***.' " The court initially observed that the words "right of way" denote a tenure by which land is held; they are descriptive of the easement right. (*Tallman*, 379 Ill. at 446-47, 41 N.E.2d at 540.) The court later noted that the law is well settled in Illinois that the granting of a right-of-way to a railroad company does not convey a fee in the land, but conveys only an easement. (*Tallman*, 379 Ill. at 451, 41 N.E.2d at 542.) In reaching its ultimate conclusion, the court stated:

> "In the present case to hold a fee simple of all interest is granted would be to give no effect whatever to the words, 'right of way,' but to hold the conveyance is an easement is compatible with the language of the deed, since the fee simple would be in the easement and not in the land to which it is appurtenant." *Tallman*, 379 Ill. at 452, 41 N.E.2d at 543.

■ We believe this is the construction to be placed on the 1849 Act. The 1849 Act provides the railroad is "seized in fee," but it also contains language indicating the estate received by the railroad is of a

limited nature. It is only this construction, that the railroad acquires a fee in the easement or right-of-way, which harmonizes all the provisions. This interpretation easily comports with the *Caldwell* order which consistently refers to right-of-ways and concludes:

> "[The railroad] shall have as and for a right of way and be seized in fee of [land description] \*\*\*. \*\*\* And \*\*\* may take possession of and hold and use said right of way." (Monticello R.R. Co. v. Caldwell (Sept. 3, 1873, Cir. Ct. Champaign Co.), No. 4360, slip op. at 7.)

It is particularly relevant that the "as and for a right of way" language in *Caldwell* is virtually identical with that language which the *Tallman* court found so important.

. This conclusion is further supported by the charter of the Monticello Railroad which initially acquired the property in question as plaintiff in *Caldwell*. "An Act to incorporate the Monticello Railroad Company" provides:

> "The said corporation shall have a right of way upon and may appropriate to its sole use and control, for the purposes contemplated herein, land \*\*\*. All such lands \*\*\* may be taken and paid for, if any damages are awarded, in the manner provided in [the 1849 Act] \*\*\* and the final decision or award shall vest in the corporation hereby created all the rights, franchises and immunities in said act contemplated and provided." (Private Law of Illinois (1861), Railroads, par. 3, at 503 (passed by 22d Ill. Gen. Assem.).)

Again, we find the references to the railroad acquiring a right-of-way, and the language indicating the property was acquired for the purpose contemplated—a railroad—which suggests the right of way is limited to that use.

Defendants focus much of their argument on the "seized in fee" language, maintaining that to hold that anything less than a fee simple absolute is conveyed distorts this language.

■ However, we respond to defendant's argument and find further support for our conclusion by relying on our supreme court's analysis in *Texas Co. v. O'Meara* (1941), 377 Ill. 144, 149, 36 N.E.2d 256, 258, where it explained:

> "A greater portion of appellants' brief is devoted to citations and argument intended to show that the conveyance in question was 'in fee' and the arguments pro and con as to this point are urged by them as determinative of the result. We do not believe this to be true. In *Oswald v. Wolf*, 126 Ill. 542, we were, as here, considering a title to a right-of-way. We there pointed

out on authority of Blackstone that the word 'fee,' as meaning an estate of inheritance, is applicable to and may be had in any kind of hereditament, either corporeal or incorporeal. We held that an easement of way is an incorporeal hereditament, not subject to livery of seisin, but subject only to grant; that rights-of-way have attached to them the same idea of duration or quantity of estate as is applied to corporeal hereditaments; that the duration of the estate, or the time for which the enjoyment is to continue forms the quantity of the estate, and hence, if the grant be an estate of inheritance either in hereditaments corporeal or incorporeal, a fee is taken, while if for life only a life estate would be granted."

Also, there is additional support from the definition contained in Black's Law Dictionary 741 (4th ed. 1951), which provides:

"Ordinarily, word 'fee' or 'fee simple' is applied to an estate in land, but term is applicable to any kind of hereditament, corporeal or incorporeal, and is all the property in thing referred to or largest estate therein which person may have."

■ Accordingly, we conclude as noted earlier that the phrase "seized in fee" is properly construed as applying to the largest estate the railroad may acquire. In the present case, a review of the *Caldwell* order, the charter of the Monticello Railroad, and the 1849 Act establishes that the estate acquired is a right-of-way for the purposes of the railroad and, when that purpose is no longer being met, the land reverts to the underlying landowner.

Accordingly, we conclude the 1849 Act only grants the railroad a right-of-way which ends upon the railroad abandoning use of the property. The order of the circuit court of Champaign County is affirmed.

The panel deciding this case specifically commends the trial judge for his thoroughness as illustrated in his written opinion. We emphasize to other trial judges that such is of untold value when we review the trial court's judgment.

Affirmed.

GREEN and STEIGMANN, JJ., concur.