# United States Court of Appeals for the Federal Circuit

---

**WILLIAM E. BARLOW, TWILA L. BARLOW, REAL ESTATE DEVELOPMENT ASSOCIATES, LLC, ET AL.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1381

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00396-ZNS, Judge Zachary N. Somers.

---

Decided: November 22, 2023

---

MICHAEL JAMES SMITH, Stewart, Wald & Smith, LLC, St. Louis, MO, argued for plaintiffs-appellants. Also represented by STEVEN M. WALD; REED W. RIPLEY, Kansas City, MO.

TAMARA N. ROUNTREE, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TODD KIM, WILLIAM B. LAZARUS.

---

Before TARANTO, STOLL, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

This appeal originates from a "rails-to-trails" conversion in the state of Illinois, where Appellants own property adjacent to the railroad line. Appellants sued the government in the United States Court of Federal Claims, seeking compensation for alleged takings arising from the operation of the National Trails System Act Amendments of 1983 ("Trails Act"), 16 U.S.C. § 1247(d). At the relevant time, the Court of Federal Claims concluded that Union Pacific Railroad Company ("Union Pacific") held in fee simple the parcels of land with written instruments, and that Appellants failed to establish that they held in fee simple the non-instrument parcels. *See Barlow v. United States*, 123 Fed. Cl. 186, 198–200, 202 (2015) ("*Decision I*"); *Barlow v. United States*, 150 Fed. Cl. 771, 784–86 (2020) ("*Decision II*").[1] Accordingly, the Court of Federal Claims held that Appellants had no compensable property interests in the contested parcels and that no takings occurred. *See Decision I* at 189, 202; *Decision II* at 775, 786. Appellants now appeal from these decisions. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

Between 1882 and 1883, the Peoria and Farmington Railway acquired property through conveyances, transfers, and condemnation and constructed the now-abandoned railroad line in dispute (the "Railroad Line"). *See Decision I* at 189. In July 2008, Union Pacific, the successor-in-

---

[1]    These decisions also involved other landowners, deeds, and properties that are not at issue in this appeal. *See Decision I* at 200–01; *Decision II* at 782, 785–86.

interest to the Peoria and Farmington Railway,[2] filed a notice of exemption from formal abandonment proceedings with the Surface Transportation Board ("STB"), which has exclusive authority over the construction, operation, and abandonment of railroad lines. *See id.*; J.A. 593. A few weeks later, the Illinois Department of Natural Resources showed interest in acquiring the Railroad Line for railbanking and interim trail use. *See Decision I* at 189; J.A. 594. In November 2008, the STB issued a Notice of Interim Trail Use ("NITU") for the Railroad Line, allowing Union Pacific and the Illinois Department of Natural Resources to negotiate a railbanking and interim trail use agreement. *See Decision I* at 189; J.A. 593–95.

On June 13, 2013, Appellants sued the United States, alleging Fifth Amendment takings claims by operation of the Trails Act with respect to fifty-one parcels of land located along the Railroad Line. *See* J.A. 64 ¶ 2, 65–66 ¶¶ 8–10 (Complaint); J.A. 77 ¶ 2, 83 ¶¶ 29–31 (First Amended Complaint); J.A. 96 ¶ 2, 107 ¶¶ 49–51 (Second Amended Complaint); J.A. 814 ¶ 2, 815–25 ¶¶ 6–48, 825 ¶¶ 50–52 (Third Amended Complaint); *Decision I* at 190, 192; *Decision II* at 776, 778. Twenty-eight parcels are relevant to this appeal. *See* Appellants' Br. 22–23, 34, 39;[3] Appellee's Br. 10–11. Of those parcels, (i) twenty-two were conveyed by instruments including the words "right of way" ("ROW Agreements") (parcel numbers 21, 23, 37, 51–52, 55, 57–59, 74–75, 80, 83, 86, 91–96, 98, 102);

---

[2]    Union Pacific is also the successor-in-interest to the Burlington Monmouth & Illinois River Railway Company and the Iowa Central Railway Company. *See Decision I* at 189.

[3]    The Appellants only list twenty-seven parcels, combining two parcels (parcel numbers 57 and 58, J.A. 613–14) into one. *Compare* Appellants' Br. 22–23 *with Decision I* at 190 n.2.

(ii) three were conveyed by instruments including the words "for railroad purposes" ("Purpose Agreements") (parcel numbers 44, 47, 50); and (iii) three are those for which Appellants have not produced relevant instruments (parcel numbers 33, 87, 90) ("non-instrument parcels"). *See* J.A. 608–21, 1209, 1213–14, 1217, 1226–31, 1236–38, 1249, 1253, 1256, 1260, 1264 (ROW Agreements); J.A. 623–24, 858 (Purpose Agreements); Appellants' Br. 22–23, 34, 39; Appellee's Br. 10–11.

With respect to the ROW Agreements, the parties agree that the twenty-two agreements all include similar relevant language:

### RIGHT OF WAY

In Consideration Of the benefits to be derived from the location and building of the BURLINGTON, MONMOUTH & ILLINOIS RIVER RAILWAY, and ONE DOLLAR to me in hand paid by said Railway Company, the receipt whereof is hereby acknowledged, I do hereby *grant and convey* unto the said BURLINGTON, MONMOUTH & ILLINOIS RIVER RAILWAY COMPANY *the RIGHT OF WAY* for said Railway, . . . over or across the [description of land].

And I Promise and Agree To make all proper and necessary deeds *to convey in fee simple* to said Company, *said RIGHT OF WAY*, as soon as said Railway is located *on or across* said above described premises[.]

J.A. 618 (emphases added in italics); *see Decision I* at 196; *Decision II* at 783.[4]

---

[4]    Some of the ROW Agreements do not contain the same relevant language as described above. *See, e.g.*, J.A.

With respect to the three Purpose Agreements, the agreement governing parcel number 44 recites in relevant part:

> [T]he Grantors . . . *CONVEY and QUIT-CLAIM* to the Burlington Monmouth and Illinois River Railway Company *for railroad purposes* . . . all interest in the following described real estate, to-wit:  a strip of land[.]

J.A. 623 (emphases added); *see Decision I* at 198.  And the agreements governing parcel numbers 47 and 50 recite in relevant part:

> [T]he Grantors . . . *Convey and Warrant for railroad purposes* to the Burlington Monmouth and Illinois River Railway Company . . . the following described real estate, to-wit:  A strip of land[.]

J.A. 624, 858 (emphasis added); *see Decision I* at 198; *Decision II* at 784–85.

On November 14, 2014, Appellants filed a motion for partial summary judgment on whether takings occurred with respect to certain parcels, and the government subsequently cross-moved for partial summary judgment on the same parcels, contending no takings occurred.  *Decision I* at 192.  Appellants again filed a motion for partial summary judgment on the same question with respect to additional parcels in March 2020, and the government also later cross-moved for partial summary judgment on these additional parcels.  *Decision II* at 778.

---

610.  However, this difference in language does not impact the outcome, and the parties agreed that the relevant language of the deed is recited above.  Appellants' Br. 23–24, Appellee's Br. 22; *see also Decision I* at 196; *Decision II* at 776–77.

In deciding both sets of cross-motions for partial summary judgment, the Court of Federal Claims denied Appellants' motions and granted the government's motions with respect to the parcels for which Appellants produced ROW Agreements and Purpose Agreements. *See Decision I* at 198–99; *Decision II* at 784–85. The Court of Federal Claims found that undisputed material facts show that Union Pacific held these parcels in fee simple when the STB issued the NITU. *See Decision I* at 198–99; *Decision II* at 784–85. The Court of Federal Claims also denied Appellants' partial summary judgment motion and granted the government's partial summary judgment motion with respect to the non-instrument parcels at issue in *Decision I* because Appellants failed to meet their burden of proof to show that they have cognizable property interests in those parcels. *See Decision I* at 199–200, 202. Accordingly, the Court of Federal Claims entered a judgment under Rule 54(b) in favor of the government. *See* J.A. 1489.

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

"Whether a taking has occurred is a question of law based on factual underpinnings." *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1169 (Fed. Cir. 2018) (citation omitted). However, summary judgment is "in all respects reviewed *de novo*." *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003) (citation omitted). "[S]ummary judgment is appropriate only when there is no genuine issue of material fact, and all factual inferences should be viewed in the light most favorable to the non-moving party." *Chi. Coating*, 892 F.3d at 1169 (citations omitted). Additionally, "[t]he nature or scope of a compensable property interest in a takings analysis is a question of law," which we review de novo. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013) (citation omitted).

### III. DISCUSSION

We have set forth a three-part test to determine whether a claimant is entitled to compensation in rails-to-trails cases. *Chi. Coating,* 892 F.3d at 1170 (citation omitted). "If the railroad company owns the land in fee simple, then the Government cannot have committed a taking and the analysis ends." *Id.* (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996)). "Second, if the railroad possesses only an easement, the claimant must show that the trail use falls outside the scope of the easement." *Id.* (citation omitted). "Finally, even if the easement permits using the land as a recreational trail, claimants may recover if the easement terminated or was abandoned prior to the alleged taking." *Id.* (citation omitted). "[W]e must apply the law of the state where the property interest arises"—here, Illinois—in addressing these questions. *Id.* (citations omitted); *see also Preseault*, 100 F.3d at 1535–36, 1541–42, 1548–49 (applying state law).

Under Illinois law, "'the cardinal and all-important rule is to ascertain the intention of the parties,' as gathered from the entire instrument, considering 'the facts the parties had in mind, including their situation, the state of the property, and the objects to be attained.'" *Chi. Coating*, 892 F.3d at 1170 (first quoting *Tallman v. E. Ill. & Peoria R. Co.*, 41 N.E.2d 537, 539 (Ill. 1942); and then quoting *Magnolia Petro. Co. v. West*, 30 N.E.2d 24, 26 (Ill. 1940)) (cleaned up). Certain words, such as "convey," create a statutory presumption under the Illinois Conveyances Act that "a fee simple estate was intended absent limitation to a lesser estate by express words or construction of law." *Sowers v. Ill. Cent. Gulf R.R. Co.*, 503 N.E.2d 1082, 1085 (Ill. App. Ct. 1987); *see* 765 ILL. COMP. STAT. 5/13. In determining whether a deed conveys a fee or an easement to a railroad company, Illinois courts look at whether "the granting clause conveys a designated strip or piece of land, or whether it refers to a right or privilege with respect to the described premises." *McVey v. Unknown S'holders of*

*Inland Coal & Washing Co.*, 427 N.E.2d 215, 217 (Ill. App. Ct. 1981) (citation omitted).

On appeal, Appellants argue that the Court of Federal Claims erred in finding that (i) the ROW Agreements conveyed fee simple estates, *see* Appellants' Br. 13; *see also id.* at 16–32; (ii) the Purpose Agreements conveyed fee simple estates, *see id.* at 13; *see also id.* at 32–36; and (iii) Appellants did not satisfy their burden to show cognizable property interests in the non-instrument parcels, *see id.* at 13; *see also id.* at 36–46. We address each argument in turn.

## A.  The ROW Agreements

Appellants argue that the Court of Federal Claims erred in interpreting the ROW Agreements as conveying fee simple estates rather than easements limited to railroad purposes. *See* Appellants' Br. 13, 16; *see also id.* at 16–32. First, Appellants argue that under Illinois law, "the Right of Way for said Railway" language in the ROW Agreements and the placement of this language in the granting clause show the parties' intent to convey easements rather than fee simple estates. *See id.* at 24, 27; *see also id.* 24–28. Appellants also argue that the Court of Federal Claims erred in relying on the words "grant and convey" to support construing the ROW Agreements as conveying fee simple estates. *See id.* at 29. Further, Appellants contend that language outside the granting clause—namely, the "over or across" language used to describe the right granted with respect to the land, the "Right of Way" title, and the habendum clause[5]—also indicates that the parties meant to convey easements. *See id.* at

---

[5]  The habendum clause "limit[s] and define[s] the estate granted," and "if there is repugnancy between the granting clause and the habendum the former must prevail." *Morton v. Babb*, 96 N.E. 279, 281 (Ill. 1911) (citations omitted).

28–30. Lastly, Appellants argue that the extrinsic evidence, such as subsequent deeds, also supports their interpretation that the ROW Agreements convey easements. *See id.* at 31.

The government counters that the Court of Federal Claims did not err in interpreting the ROW Agreements to convey fee simple estates. *See* Appellee's Br. 15; *see also id.* 18–37. First, the government argues that the ROW Agreements' "grant and convey" language created a rebuttable presumption that the ROW Agreements are fee simple conveyances. *See id.* at 20–21; *see also id.* at 18–25. The government further argues that Appellants failed to rebut the statutory presumption because the ROW Agreements include no language that expressly limits the grant to a right of use. *See id.* at 25; *see also id.* 25–37.

We agree with Appellants. Although the Court of Federal Claims did not err in finding that a presumption of fee simple estate applies, *see Decision I* at 196; *Decision II* at 783, that presumption was rebutted by other express words in the agreement. For example, the ROW Agreements expressly convey a "RIGHT OF WAY" as the object of the grant in the granting clause. *See* J.A. 618; *Decision I* at 196; *Decision II* at 783. Such a reference to a right of way, specifically in the granting clause, conveys an easement rather than a fee simple. *McVey*, 427 N.E.2d at 217 (citations omitted); *see also Cleveland, Cincinnati, Chi. & St. L. Ry. Co. v. Cent. Ill. Pub. Serv. Co.*, 43 N.E.2d 993, 995–96 (Ill. 1942) (finding easement conveyed when grantor "grant[ed] . . . the right of way for said railroad"); *Branch v. Cent. Tr. Co. of Ill.*, 151 N.E. 284, 285, 287 (Ill. 1926) (finding easement conveyed when grantor conveyed "a railroad right of way"); *Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin*, 786 N.E.2d 1033, 1042 (Ill. App. Ct. 2002) (explaining that "the term 'right-of-way' is synonymous with 'easement'"); *Dep't of Pub. Works & Bldgs. for & in Behalf of People v. Schmauss,* 285 N.E.2d 628, 629–30 (Ill. App. Ct. 1972) (finding easement conveyed when grantor

"g[a]ve, remise[d], release[d], convey[ed] and quit-claim[ed] . . . the right of way").

Outside the granting clause, other express words in the ROW Agreements also rebut the presumption. First, the ROW Agreements' "RIGHT OF WAY" title demonstrates an intention to convey easements. *See Penn Cent. Corp. v. Commonwealth Edison Co.*, 512 N.E.2d 118, 120 (Ill. App. Ct. 1987) (explaining that deed entitled "Right of Way Deed" and referring to a right-of-way in the granting clause will be construed to convey an easement). Second, the "over or across" and "on or across" language in the ROW Agreements is consistent with the description of the right of way and shows an intent to convey an easement. *See McVey*, 427 N.E.2d at 217 (finding "over and through" language to indicate an easement); *Diaz*, 786 N.E.2d at 1042 (finding easement conveyed because "[c]onstruing [the] deed as creating a fee simple" would "render[] the terms 'over and through' and 'right-of-way' meaningless").

We also find that the ROW Agreements' second paragraph—the habendum clause—supports our interpretation. The government argues that the clause shows the intent to convey fee simple estates by reciting that the grantors agreed "to make all proper and necessary deeds 'to convey in fee simple.'" Appellee's Br. 23. However, the full sentence states: "And I Promise and Agree To make all proper and necessary deeds *to convey in fee simple* to said Company, *said RIGHT OF WAY*, . . ." J.A. 618; *see Decision I* at 196; *Decision II* at 783. Interpreting the ROW Agreements to mean "that the railroad acquire[d] a fee in the easement or right-of-way . . . harmonizes all the

provisions." *Abrams v. Royse*, 569 N.E.2d 1329, 1333 (Ill. App. Ct. 1991). [6]

We are not persuaded by the government's argument that the use of the term "right of way" in the ROW Agreements refers to the land conveyed, not a limitation on the interest conveyed. Appellee's Br. 27; *see id.* at 26–28. The government's argument fails because the cases are distinguishable. The court in *Urbaitis* concluded that the "right of way" term was "used merely as a shorthand reference to the land itself" in the deed at issue because it was located "in the conditions clause" of the deed and not "in the actual granting clause of the deed." 575 N.E.2d at 552–53. Because the "right of way" language appears in the granting clause in this case, *Urbaitis* is inapposite. *See id.* at 553–54 (distinguishing cases based on whether the "right of way" language appeared in the granting clause or in another part of the deed). The other cases relied on by the government are similarly distinguishable. In both *Sowers* and *Chicago Coating*, the "right of way" language was in the legal description of the land, not in the granting clause of the pertinent deed. *Sowers*, 503 N.E.2d at 1088; *Chi. Coating*, 892 F.3d at 1171–72. Those cases are unlike the present case where the "right of way" language serves to limit the conveyance.

Because we conclude that the Court of Federal Claims erred in finding that the ROW Agreements conveyed fee simple estates rather than easements, we reverse the

---

[6]    We do not reach Appellants' arguments concerning extrinsic evidence, Appellants' Br. 31, because we find the language in the ROW Agreements unambiguously conveys easements. *See Urbaitis v. Commonwealth Edison*, 575 N.E.2d 548, 552 (Ill. 1991) ("Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors.").

grants of the government's motions for partial summary judgment as to the relevant parcels and the denials of Appellants' motions for partial summary judgment as to the same parcels.

### B.   The Purpose Agreements

For the Purpose Agreements, Appellants argue that the Court of Federal Claims also erred in interpreting those agreements to convey fee simple estates. *See* Appellants' Br. 13; *see also id.* at 32–36. Because the three deeds all include expressly declared purposes in the granting clause, Appellants argue that they convey easements. *See id.* at 14; *see also id.* at 33–35. Appellants further argue that the Court of Federal Claims mistakenly relied on cases discussing deeds that did not include an expression of purpose in the granting clause. *See id.* at 35–36.

We agree with Appellants. As was the case for the ROW Agreements, the Court of Federal Claims correctly found a rebuttable presumption of a fee simple estate for each of the Purpose Agreements based on the Illinois Conveyances Act. *Decision I* at 198; *Decision II* at 785. But this presumption is rebutted by the language in the granting clause of the deeds that restricts the right of the conveyance to a lesser estate, *i.e.*, "for railroad purposes." *See Tallman*, 41 N.E.2d at 543 ("[W]here there is language, either in the granting clause or in the habendum of the deed, limiting the estate conveyed by such granting words to one less in extent than a fee, such words of limitation will be given effect."); *cf. Urbaitis*, 575 N.E.2d at 553 ("It is of considerable relevance that neither the term 'right-of-way' nor any other language purporting to limit the estate appears in the actual granting clause of the deed. . . . We cannot conclude that the incidental use of the term 'right-of-way' in the conditions clause was intended to limit the estate granted to a mere easement.").

In circumstances similar to the one in this case, courts have held that an easement was conveyed. For example,

in *Carter Oil Co. v. Myers*, the Seventh Circuit found a deed conveyed an easement under Illinois law despite the "grant, convey and dedicate" language in part because of the limiting language "for the purpose of a public highway" in the granting clause. 105 F.2d 259, 260–61 (7th Cir. 1939). The Seventh Circuit reasoned that to construe the deed as granting a fee would "give the maximum effect to the words 'grant and convey,' and [] completely ignore the other terminology of the instrument which to us appears to be definitive of its real intent." *Id.* at 261. In *Magnolia,* the Supreme Court of Illinois held that a similar granting clause in the deed, stating "to be used for road purpose," indicated an intent to convey an easement despite also including the phrase "convey and warrant." 30 N.E.2d at 25–27.

The cases relied on by the Court of Federal Claims do not persuade us to reach a different conclusion. *See Decision I* at 198–99 (citing cases); *Decision II* at 784–85 (same). These cases are distinguishable and do not require finding conveyances of fee simple interests because they involve deeds where the limiting language appeared in the *recital* or *consideration clause*, not in the granting clause. In *Penn Central*, the court found the "'for the purpose of' language . . . to be merely expressive of the purpose which motivated the grantor to make the conveyance," and thus did "not purport to limit the estate conveyed[.]" 512 N.E.2d at 120. In *Sowers*, the court held that "the language of purpose in the consideration clause cannot be construed to limit the estate conveyed." 503 N.E.2d at 1086. In *Keen v. Cleveland, Cincinnati, Chi. & St. Louis Ry. Co.*, the court likewise found that the purpose language was "merely a recital of the consideration for the deed" and, therefore, "d[id] not purport to be a limitation on the estate conveyed." 64 N.E.2d 499, 503 (Ill. 1945).

This court's holding in *Chicago Coating* is similarly inapposite. There, in addressing the Jones Deed, the court held "the right of way," "for railroad purposes," and "over

and across" language did not limit the conveyance of the parcel but described the right-of-way the rail line already owned. 892 F.3d at 1171–72. Moreover, when discussing the Wilkins Deed, the court indicated that the granting clause was "devoid of any easement-indicating language," such as "reference to how the land would be used," and held that the deed conveyed the property in fee simple. *Id.* at 1173–74.

Because we conclude that the Court of Federal Claims erred in finding the Purpose Agreements conveyed fee simple estates rather than easements, we reverse the grants of the government's motions for partial summary judgment as to the relevant parcels and the denials of Appellant's motions for partial summary judgment as to the same parcels.

## C.  The Non-Instrument Parcels

For the non-instrument parcels, Appellants argue that as a matter of Illinois state law no conveyance documents apply, *see* Appellants' Br. 38–39, and contend that the greatest interests Union Pacific could have obtained were easements via adverse possession, *see id.* at 38. Appellants further argue that because they own the fee simple interests in land abutting the Railroad Line, they are presumed to own fee simple interests in the land within the easements. *See id.* at 41–42.

The government argues in response that the Appellants failed to meet their burden of establishing cognizable property interests because (i) evidence suggests that the conveyance instruments exist, but Appellants failed to produce them, *see* Appellee's Br. 49–50, and (ii) Appellants failed to make the case that Union Pacific acquired the disputed parcels via adverse possession, *see id.* at 50–52. Additionally, the government contends that even if Appellants established adverse possession, a railroad *can* acquire fee simple interests by adverse possession. *See id.* at 54.

Here too, we agree with the Appellants. At the outset, the parties dispute which party bears the burden of proof concerning lost instruments. *See* Appellants' Br. 42–44; Appellee's Br. 49–50. Under Illinois law, once it is established that the conveyance instruments were lost, the party relying on the contents of the lost instruments—here, the government—has the burden to establish their contents by clear and convincing evidence. *See Whipple v. Carrico*, 137 N.E. 84, 86 (Ill. 1922) ("A party *seeking to establish the existence and contents of a lost deed . . .* must bear the burden of making such proof in a clear and conclusive manner.") (emphasis added); *Metcalf v. Altenritter*, 369 N.E.2d 498, 500–01 (Ill. App. 1977) ("If the deed were lost or destroyed, defendants [who argued deed conveyed title to them] had the burden of proving, by clear and convincing evidence, that it was executed and delivered as required by law.").

Applying this framework, Appellants argue that the conveyance instruments were lost or destroyed. *See* Appellants' Br. 41. Appellants produced evidence of a diligent search, including valuation schedules, written requests, and subpoenas to acquire documents related to the Peoria and Farmington Railway's acquisition of use rights, but Appellants were unable to locate the conveyance instruments.[7] *See Rankin v. Crow*, 19 Ill. 626, 629 (1858) (explaining that one "must search every place where there is a reasonable probability that it may be found," before a court can admit secondary evidence of the contents of a lost or destroyed instrument) (citation omitted); *Hawley v. Hawley*, 58 N.E. 332, 334 (Ill. 1900) (finding proof of loss or

---

[7]　*See* Appellants' Br. 39–41; J.A. 583–607 (subpoena to Union Pacific); J.A 636–38 (Appellant's letter and Union Pacific's reply indicating it could not locate the document requested for parcel number 33); J.A 625–26 (Union Pacific's memo indicating no record of conveyance to the railroad for parcel numbers 87 and 90).

destruction of documents to be sufficient when a diligent search was conducted at the office of the deceased and in the safe where he kept such papers). Appellants have thus established that the written instruments, if they ever existed, were lost or destroyed.

We further agree with Appellants that the government failed to demonstrate the content of the lost deed with clear and convincing evidence, *see* Appellants' Br. 42–43 & n.18, and that the lost instruments are therefore void. When a deed is lost, but "there is uncertainty as to description, the deed is void." *Chi., Wilmington & Franklin Coal Co. v. Menhall*, 42 F. Supp. 81, 82 (E.D. Ill. 1941), *aff'd in part, modified in part*, 131 F.2d 117 (7th Cir. 1942) (citations omitted); *Whipple*, 137 N.E. at 86 ("There is not sufficient proof of the contents of the deed to establish title."); *Shipley v. Shipley*, 113 N.E. 906, 910 (Ill. 1916) ("In our judgment the evidence in this case regarding the material parts of this alleged lost deed is not sufficiently clear and convincing to sustain the decree."); *see also Alleman v. Hammond*, 70 N.E. 661, 661 (Ill. 1904) ("When the land intended to be conveyed cannot be located from the description thereof in the deed, the deed is void for uncertainty.") (citation omitted). Any parol evidence "regarding a deed's existence and contents must be clear and convincing." *Menhall*, 42 F. Supp. at 82. Although the government points to the valuation schedules in an attempt to establish that specific instruments existed as to the conveyance of the parcels, *see* Appellee's Br. 49–50, those valuation schedules do not specify the interests acquired by the railroad, merely noting the kind of instrument as "contract" for parcel number 33 and "deed memo" for parcel numbers 87 and 90. J.A. 599, 604–05. *See Superior Oil Co. v. Harsh*, 39 F. Supp. 467, 469 (E.D. Ill. 1941) ("[N]o presumption or inference arises from the fact that a paper bearing the word 'deed' was at one time amongst certain records . . . ."), *decree aff'd*, 126 F.2d 572, 573–75 (7th Cir. 1942). Because there was no clear and convincing parol evidence establishing the

contents of the conveyance instruments, they are presumed to be void.

Appellants next argue that where there are no valid conveyance instruments, Union Pacific could have at most obtained prescriptive easements. *See* Appellants' Br. 38; *see also id.* 36–38. We agree. Article 2, Section 13 of the Illinois Constitution of 1870 provides that "[t]he fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken." ILL. CONST. art. II, § 13 (1870); *see also Branch*, 151 N.E. at 288 (same); *Chi. & E. Ill. R.R. Co. v. Clapp*, 66 N.E. 223, 224 (Ill. 1903) (same). Therefore, without evidence that an express grant took place, the greatest interests Union Pacific could have obtained were easements.

Lastly, we agree that the Appellants established that they own fee simple interests in the non-instrument parcels because of the centerline presumption. *See generally* Appellant's Br. 41–42. We, like the Court of Federal Claims, recognize that Appellants have "put forward documents to show that [they] own the land abutting the disputed parcels." *Decision I* at 199 & n.11; *see* Ex. M to Plaintiffs' Mot. Partial Summ. J., *Barlow v. United States*, No. 1:13-cv-00396-LKG (Fed. Cl. Nov. 14, 2014) (Dkt. 28-3–8) (claim books including deeds for the landowners at issue). It is further undisputed that these records show that Appellants owned the land abutting the Railroad Line. *Decision I* at 189; *see* Oral Arg. at 30:39–31:15, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1381_02072023.mp3 (government conceding that it was incorrect that Appellants "failed to establish as a threshold matter that they themselves own the land adjoining the [non-instrument] Parcels," citing Appellee's Br. 48). In Illinois, the centerline presumption applies, and therefore Appellants are presumed to hold fee simple interests in the non-instrument parcels by establishing that they own the land abutting those parcels. *See Prall v. Burckhartt*, 132

N.E. 280, 282 (Ill. 1921) (noting that at common law, "[a] deed of an abutting lot passed the title to the center of the street—or included the entire street, as the case might be—burdened, of course, with the easement."); *see also Castillo v. United States*, 952 F.3d 1311, 1320–21 (Fed. Cir. 2020) (holding Florida's centerline presumption of highways and streets apply to railroads, and noting "[m]any other jurisdictions—very much the predominant number among those whose law has been cited to us—have applied the centerline presumption to railroad rights-of-way"); *cf. Diaz*, 786 N.E.2d at 1039–41 (finding "by virtue of the chain of title leading back to [grantor], [abutting landowners] have demonstrated that they hold title to the right-of-way" formerly used by a railroad). Because we hold that Union Pacific can at most obtain easements, not fees, due to the voided, lost instruments, the presumption that Appellants own fee simple interests to the centerline of the railroad corridor is unrebutted. [8]

We also are not persuaded by the government's citation to cases purporting to hold that the railroad can obtain fee interests via adverse possession. *See* Appellee's Br. 53–54. For example, the government's reliance on Court of Federal Claims cases applying laws of other states is misplaced. *See* Appellee's Br. 53–54 (citing *McClurg Fam. Farm, LLC v. United States*, 115 Fed. Cl. 1 (2014) (applying Iowa law); *Hardy v. United States*, 127 Fed. Cl. 1, *on reconsideration in part*, 129 Fed. Cl. 513 (2016), *and aff'd in part, vacated*

---

[8]    Because we find that the Court of Federal Claims erred as to the non-instrument parcels, we need not consider Appellants' alternative argument that the denial by the Court of Federal Claims of the government's partial summary judgment motion regarding similar parcels without instruments in *Decision II* contradicted its grant of the government's partial summary judgment motion in *Decision I*. *See* Appellants' Br. 45–46.

*in part, remanded*, 965 F.3d 1338 (Fed. Cir. 2020) (applying Georgia law); *Rogers v. United States*, 107 Fed. Cl. 387 (2012) (applying Florida law), *aff'd*, 814 F.3d 1299 (Fed. Cir. 2015)).  Because we rely on Illinois state law in finding Union Pacific at most obtained easements, these cases are unpersuasive.

For the foregoing reasons, the Court of Federal Claims erred in finding that Appellants "have simply not met their burden" to show that they owned the non-instrument parcels in fee simple at the time that the STB issued the NITU. *Decision I* at 200.  Therefore, we reverse the decision of the Court of Federal Claims granting the government's motion for partial summary judgment as to the non-instrument parcels and denying the Appellants' motion for partial summary judgment as to the same parcels.  *Id.*

## IV. CONCLUSION

We have considered the government's remaining arguments and find them unpersuasive.  We conclude that the ROW Agreements and the Purpose Agreements conveyed easements to Union Pacific.  We also conclude that Appellants met their burden to show a cognizable property interest in parcel numbers 33, 87 and 90 and that Union Pacific could not have held interests greater than easements in these parcels.  Accordingly, we reverse the grants of the government's motions for partial summary judgment and denials of Appellants' motions for partial summary judgment with respect to the twenty-eight parcels at issue and remand to the Court of Federal Claims for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.