# United States Court of Appeals for the Federal Circuit

---

**ATS FORD DRIVE INVESTMENT, LLC, ET AL.,**
*Plaintiff*

**GODBY PROPERTIES, LP, REZIN FAMILY INVESTMENTS LLS,  C/O GREENSTONE ASSET MANAGEMENT, BRIAN L. SCHOONVELD, GRACE L. SCHOONVELD, CO-TRUSTEES OF THE BRIAN L. SCHOONVELD AND GRACE L. SCHOONVELD REVOCABLE TRUST UTA 6/13/00, MAYS PROPERTY MANAGEMENT COMPANY LLP, JULIA ANN MCKIM, KIMBERLY A. JONES, CAESAR B. DOYLE, VASCO WALTON, BRINKLEY INVESTMENT GROUP, LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1760

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00471-MMS, Senior Judge Margaret M. Sweeney.

---

Decided:  May 5, 2025

---

MARK F. HEARNE, II, True North Law Group, LLC, St. Louis, MO, argued for plaintiffs-appellants.  Also represented by STEPHEN S. DAVIS.

DAVID S. FRANKEL, Environment and Natural Resources Division, United States Department of Justice, Boston, MA, argued for defendant-appellee.  Also represented by TODD KIM, Washington, DC.

———————————

Before LOURIE, STOLL, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

This appeal originates from a rails-to-trails conversion in Indiana.  Plaintiffs-Appellants are a group of landowners[1] who own land adjacent to, and purportedly underlying, the former Indiana Nickel Plate Line.  Plaintiffs sued the United States in the Court of Federal Claims seeking compensation for an alleged taking arising from the operation of the National Trails System Act Amendments of 1983 ("Trails Act"), 16 U.S.C. § 1247(d).  Specifically, Plaintiffs alleged that the issuance of Notices of Interim Trail Use ("NITUs") constituted a Fifth Amendment taking.  The Court of Federal Claims rejected Plaintiffs' request to certify a question to the Indiana Supreme Court, held that Plaintiffs lacked a compensable property interest, and granted summary judgment to the United States.  *See ATS Ford Drive Invest., LLC v. United States*, 156 Fed. Cl. 397, 406, 418–19 (2021) ("*Decision*").[2]  We affirm.

———————————

[1]    Several other Indiana landowners with similar claims, joined by two professors of  property law, filed an *amicus* brief supporting Plaintiffs-Appellants.

[2]    Plaintiffs-Appellants were joined by other plaintiffs at the Court of Federal Claims.  The Court of Federal

## I.  BACKGROUND

In 1846, the Indiana General Assembly chartered the Peru and Indianapolis Railroad Company and tasked it with building a railroad.  *Decision* at 400; 1846 Ind. Acts ch. CLXXXVI (the "Charter").  Sections 15 and 16 of the Charter authorized the Peru and Indianapolis Railroad Company to acquire land either voluntarily through "relinquishment of so much of the land as may be necessary for the construction and location of the road" or by eminent domain.  Charter §§ 15, 16.  Section 19 of the Charter provides that when the corporation "shall have procured the right of way, as hereinbefore provided, they shall be seized, *in fee simple*, of the right to such land, and they shall have sole use and occupancy of the same."  *Id.* § 19 (emphasis added).

By 1853, the Peru and Indianapolis Railroad Company had persuaded Appellants' predecessors-in-interest to sign written releases (the "Releases") relinquishing strips of land on which to build the railroad.  *Decision* at 401; *see* J.A. 217–304.  Each of the Releases contains materially identical language stating that the landowner agrees to "release and relinquish to the Peru and Indianapolis Railroad Company the right of way for so much of said road as

---

Claims divided the plaintiffs into three groups based on the different liability issues and threshold title issues faced.  *Decision* at 403.  The Court of Federal Claims decision in 2021 addresses the summary judgment motions for one of these groups.  *Id.* at 404–05.  The Court of Federal Claims later issued an opinion addressing the summary judgment motions for another group of plaintiffs that applied this earlier decision for a subgroup of plaintiffs.  *See ATS Ford Drive Investment, LLC v. United States*, 159 Fed. Cl. 132, 155 (2022) (citing *Decision* at 414–15).

may pass through or cut"[3] a described parcel. *Decision* at 401–03; *see, e.g.*, J.A. 218, 221–22, 235, 239, 244, 249, 254, 259, 263, 268, 272, 275, 281, 285, 289, 293, 298, 302; *see also* J.A. 226, 230 (containing immaterial wording differences); *cf.* Charter § 15 (authorizing the Peru and Indianapolis Railroad Company to acquire land through "relinquishment of so much of the land as may be necessary for the construction and location of the road").

A railroad line, now known as the Nickel Plate Line, was constructed on the relinquished land. *Decision* at 403; J.A. 371–75. The ownership of the railroad line subsequently passed through several successors until Hamilton County and the cities of Fishers and Noblesville became joint owners of the line. *Decision* at 403; *see, e.g.*, J.A. 104–05.

In 2017, the municipalities informed the Surface Transportation Board that they wanted to invoke the Trails Act to convert the railroad line into a recreational trail. *Decision* at 403; J.A. 103, 106, 107. In 2018, the municipalities formally requested that the Surface Transportation Board issue NITUs for the portions of the railroad line passing through their municipalities. *Decision* at 403; J.A. 125–26; J.A. 139; J.A. 373–75. The Surface Transportation Board issued the NITUs on December 21, 2018, and the municipalities became trail sponsors in 2019. *Decision* at 403; J.A. 139–41; J.A. 371.

In 2020, Plaintiffs sued the United States in the Court of Federal Claims, alleging that the trail corridor conversion constituted a compensable taking under the Fifth Amendment. *Decision* at 400; *see* J.A. 73–100. The parties each moved for partial summary judgment. *Decision* at 403; J.A. 170; J.A. 314. The United States contended

---

[3]    Capitalization, spacing, and punctuation differ among the Releases.

that, under settled Indiana law, the Releases conveyed the land underlying the Nickel Plate Line in fee simple and that Plaintiffs therefore lacked any property interest in the land they alleged was taken. *Decision* at 407; J.A. 322–26. While Plaintiffs argued that the Releases conveyed only an easement, they also sought certification of the question of the scope of the Releases' conveyance to the Indiana Supreme Court. *Decision* at 407, 418; J.A. 177; J.A. 215.

The Court of Federal Claims agreed with the United States and granted summary judgment on the claims now on appeal. *Decision* at 406–19. It held that the Indiana Supreme Court's decisions in *Newcastle & Richmond Railroad Co. v. Peru & Indianapolis Railroad Co.*, 3 Ind. 464 (1852) ("*Newcastle*") and *Indianapolis, Peru, & Chicago Railway Co. v. Rayl*, 69 Ind. 424 (1880) ("*Rayl*") are "binding precedent" that conclusively establish that releases authorized by and executed under the Peru and Indianapolis Railroad Company's legislative charter "conveyed fee simple estates." *Decision* at 412; *see also Decision* at 412–15 (finding that the relevant portions of *Newcastle* and *Rayl* were not dicta and that the Indiana Supreme Court has not abrogated *Newcastle* and *Rayl*). Thus, the Court of Federal Claims held that the Releases conveyed fee simple title to the Peru and Indianapolis Railroad Company and that Plaintiffs therefore lacked a compensable property interest under the Takings Clause. *Decision* at 414–17. The Court of Federal Claims declined to certify Plaintiffs' proposed question to the Indiana Supreme Court, holding that these cases were "directly applicable to the legislative charter and releases at issue in this case." *Decision* at 414. Furthermore, fairness and judicial efficiency weighed against certification. *See Decision* at 418.

Plaintiffs-Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.  STANDARD OF REVIEW

"Whether a taking has occurred is a question of law based on factual underpinnings." *Chi. Coating Co. v. United States*, 892 F.3d 1164, 1169 (Fed. Cir. 2018) (citation omitted).  However, summary judgment is "in all respects reviewed *de novo*." *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003).  The Court of Federal Claims "grant[s] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Ct. Fed. Claims R. 56(a).

A decision of whether to certify a question "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Appellate courts thus retain their own independent discretion when considering a request that they certify a question. *See, e.g.*, *id.* at 389–92 (reviewing an appellate court's exercise of that discretion); *Pino v. United States*, 507 F.3d 1233, 1235 (10th Cir. 2007) ("Certification by this court in no way implies an abuse of discretion by the district court in failing to certify, but only indicates our independent judgment on that question.").  While Appellants have appealed the trial court's decision not to certify, Appellants' Br. 26, because Appellants have made a renewed request for certification to this court, Appellants' Br. 7, "[o]ur consideration of the renewed request makes it unnecessary to determine whether the [trial] court abused its discretion in refusing the earlier one." *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 100 n. 11 (1st Cir. 1999).

## III.  DISCUSSION

This case turns on whether the Releases conveyed fee simple estates or easements to the Peru and Indianapolis Railroad Company.  If the Releases conveyed fee simple estates, Appellants "would have no right or interest in those parcels and could have no claim related to those parcels for a taking." *Preseault v. United States*, 100 F.3d 1525, 1533

(Fed. Cir. 1996) (en banc). "If, on the other hand, the Railroad acquired only easements for use," the next inquiry would be to determine the scope of the easements and whether the easements were terminated prior to the alleged taking. *Id.* Appellants and *Amici* argue that the Court of Federal Claims erred by refusing to certify a question to the Indiana Supreme Court and instead finding that *Newcastle* and *Rayl* dictated that the Releases conveyed fee simple estates. As explained below, we disagree.

### A.

We first address the parties' substantive arguments regarding whether the Releases convey fee simple estates or easements. As "we must apply the law of the state where the property interest arises," we apply Indiana law. *Chi. Coating*, 892 F.3d at 1170. We conclude that Indiana law at the time of the relinquishments is clear: the Releases conveyed to the Peru and Indianapolis Railroad Company fee simple estates.

The text of the Charter supports holding that the Releases conveyed fee simple title. Section 15 of the Charter authorizes the Peru and Indianapolis Railroad Company to obtain property via "a relinquishment of so much of the land as may be necessary for the construction and location of the road . . . ." Charter § 15. Section 19 states that "when said corporation shall have procured the right of way, as hereinbefore provided, they shall be seized, in fee simple, of the right to such land, and they shall have the sole use and occupancy of the same . . . ." Charter § 19. Thus, the plain language of the charter supports a conveyance in fee simple rather than an easement. Charter § 19; *cf.* J.A. 217–304.

The Indiana Supreme Court confirmed in *Newcastle* that the Charter, at the time of the relinquishments, gave rise to the conveyance of fee simple estates. In that case, the Peru and Indianapolis Railroad Company sought to block a competitor from constructing a railroad that would

cross over the Nickel Plate Line, arguing that Section 19 provided that the Peru and Indianapolis Railroad Company "shall have the sole use and occupancy of the" land it acquires. *Newcastle*, 3 Ind. at 468 (quoting Charter § 19). The Indiana Supreme Court held that Section 19 of the Charter did not grant the Peru and Indianapolis Railroad Company the right to prevent other railroads from crossing its lines or the exclusive possession of that land. *Id.* Instead, the court held Section 19 was:

> [S]imply intended as declaratory of the effect which the releases and condemnations of land spoken of in the 15th and 16th sections should have; that is, whether they should be taken to convey an easement, a right of way merely, or a fee simple title, and declaring it should be the latter . . . .

*Id.* In other words, the Indiana Supreme Court held that Section 19 of the Charter provided that landowners conveyed fee simple titles, rather than easements, when standard releases of land pursuant to Section 15 of the Charter were executed.

The Indiana Supreme Court reaffirmed this understanding of the Charter in *Rayl*. In *Rayl*, the parties disputed whether the Peru and Indianapolis Railroad Company's successor railroad had the right to construct a side-track to its railway line. 69 Ind. at 424–25. The *Rayl* plaintiffs' predecessor-in-interest signed a release with materially identical granting language to the Releases. *Compare id.* at 426 ("I . . . release and relinquish to the Peru and Indianapolis Railroad Company the right of way for so much of said road as may pass through and out the following piece or parcel of land . . . ."), *with e.g.*, J.A. 235 (agreeing to "RELEASE and RELINQUISH to the 'PERU AND INDIANAPOLIS RAILROAD COMPANY' the right of way for so much of said road as may pass through or cut the following piece, parcel, or lot of land . . . ."). The Releases were also to the same company, were governed by the same

legislative charter, and were executed around the same time as the release at issue in *Rayl*. J.A. 217–304; 69 Ind. at 426.

The plaintiffs in *Rayl* raised two arguments to void the relinquishment: (1) the relinquishment "did not specify the extent or width of the land intended to be relinquished by it;" and (2) "at the time such relinquishment was made, the legal title to the land described in it was not in [the plaintiffs' predecessor-in-interest], but in the United States." 69 Ind. at 428. The Indiana Supreme Court rejected the first argument by holding that the Charter "form[ed] a part of the contract of relinquishment" so the Peru and Indianapolis Railroad Company received the "right to take and appropriate a strip of ground, over the tract specified, not exceeding eighty feet in width." *Id.* at 429. The Indiana Supreme Court rejected the second argument by holding that it did not need to inquire as to whether the plaintiffs' predecessor-in interest, "at the time he executed the relinquishment, had such an inchoate interest in the land as enabled him to convey some estate in it." *Id.* The court held "[t]hat relinquishment, as we have construed it, supplemented by section 19 . . . purported to convey to the company an estate in fee-simple to so much of the land described in it as constituted the right of way through the land under such relinquishment." *Id.* The Indiana Supreme Court stated that "whatever title [the plaintiffs' predecessor-in-interest] subsequently acquired to the land relinquished by him enured to the benefit of the company." *Id.* Thus, the court concluded that the strip of land for the side-track was, "and has since continued to be, the property of the Indianapolis, Peru and Chicago Railway Company." *Id.* at 429–30.

Appellants and *Amici* argue that *Newcastle* and *Rayl* are distinguishable despite holding that materially identical releases conveyed fee simple estates. Appellants' Br. 47–50; Amicus Br. 6–12. We disagree. While Appellants contend that the court in *Newcastle* only held that the

Charter permitted, but did not mandate, conveyance of fee simple estates and did not address the effect of any specific conveyance, Appellants' Br. 48–50, the court in *Newcastle* plainly stated that Section 19 of the Charter was "declaratory of the effect which the releases and condemnations of land spoken of in the 15th and 16th sections should have" and "whether [the releases] should be taken to convey an easement, a right of way merely, or a fee-simple title, and declaring it should be the latter." 3 Ind. at 468. By its terms, *Newcastle* purports to resolve the question in this case. Moreover, *Rayl* resolves the effect of a materially identical conveyance by stating that it "purported to convey to the company an estate in fee-simple." 69 Ind. at 429. *Amici* argue that *Rayl* dealt with what the release at issue "purported to" convey, as opposed to what it actually conveyed. Amicus Br. 10–11. However, the context in *Rayl* indicates that the Indiana Supreme Court was merely acknowledging the dispute about whether the grantor possessed the title he purported to convey, not casting doubt on the effect of that conveyance. 69 Ind. at 429. Neither *Newcastle* nor *Rayl* is distinguishable from this case.

*Amici* argue that the relevant portions of *Newcastle* and *Rayl*, addressing whether the Peru and Indianapolis Railroad Company received a fee simple title or an easement, are dicta. Amicus Br. 5, 8, 11. We again disagree. In *Newcastle*, the Indiana Supreme Court faced a choice on how to interpret Section 19 of the Charter and whether it gave the Peru and Indianapolis Railroad Company an exclusive right to the land or only declared that fee simple title was conveyed by releases and relinquishments pursuant to the Charter. 3 Ind. at 465–68. Thus, by deciding that Section 19 of the Charter did not grant an exclusive right to the land, the court in *Newcastle* necessarily decided that Section 19 declared that releases of land executed pursuant to Section 15 transferred fee simple estates. *Id.* at 468; *see also State v. Hardy*, 7 N.E.3d 396, 401 (Ind. Ct. App. 2014) (explaining that a statement is "not

dicta" when it is "necessary for [the court's] determination of the issues") (emphasis omitted). Similarly, the determination in *Rayl* that the release conveyed a fee simple title was necessary to the holdings that "whatever title [the predecessor-in-interest] subsequently acquired to the land relinquished by him enured to the benefit of the company" and that "the strip of ground in controversy" was "the property of the Indianapolis, Peru and Chicago Railway Company." 69 Ind. at 429–30. Stated differently, for the land to be the property of the Peru and Indianapolis Railroad Company's successor railway company, and for any title to have enured to the railway company, it necessarily must have been true that fee simple title was conveyed. Accordingly, the holdings of *Newcastle* and *Rayl* that the Peru and Indianapolis Railroad Company received fee simple title are not dicta.

Appellants and *Amici* point to several cases that they contend demonstrate that Indiana law has shifted over time toward the general proposition that the language of a charter is less important than the language of the conveyance. Appellants' Br. 33–41; Amicus Br. 16–23; *see, e.g.*, *Ross, Inc. v. Legler*, 199 N.E.2d 346, 347–49 (Ind. 1964); *Cincinnati, I., St. L & C.R. Co. v. Geisel*, 21 N.E. 470, 470 (Ind. 1889); *Vandalia R. Co. v. Topping*, 113 N.E. 421, 422 (Ind. 1916). The cases cited by Appellants and *Amici* support the proposition that modern Indiana law "generally" presumes that conveying a "right of way," absent contrary indication, conveys only an easement. *Brown v. Penn Cent. Corp.*, 510 N.E.2d 641, 644 (Ind. 1987); *cf. Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 727–28 (2011) (acknowledging this "general rule" of conveying easements but also recognizing that it has exceptions). However, none of the cited cases purports to overturn *Newcastle* and *Rayl* as to the effect of the Peru and Indianapolis Railroad Company's legislative charter or the effect of a release materially identical to those at issue in this case. *See Quick v. Taylor*, 16 N.E. 588, 589 (Ind. 1888) (noting, in the

prescription context, that an "express statute authorizing the appropriation of the fee-simple" is an exception to the general rule that an easement is conveyed).  Separately, even if Indiana law has changed such that the Releases would convey an easement today, we must apply "the law in effect at the time the various arrangements were entered into."  *Hash v. United States*, 403 F.3d 1308, 1323 (Fed. Cir. 2005).  Thus, Appellants' and *Amici*'s argument that the general approach today is different is unpersuasive compared to the specific and binding holdings of *Newcastle* and *Rayl*.

Indeed, subsequent precedent has reaffirmed the holdings of *Newcastle* and *Rayl*.  The Indiana Supreme Court has recognized that the "judicial construction" of Section 19 of the Charter in *Newcastle* and *Rayl* was binding not just upon future interpretations of the Charter but upon future interpretations of similarly worded charters.  *Cleveland, C., C. & I.R. Co. v. Coburn*, 91 Ind. 557, 557–60 (Ind. 1883).  In *Coburn*, the Indiana Supreme Court addressed a similarly worded railroad charter and cited *Newcastle* for the proposition that "unconditional relinquishment of the land undoubtedly would have vested in the railroad company the absolute fee simple of the land . . . ."  *Id.* at 569–70.  While the court in *Coburn* ultimately concluded that the release in that case was conditional because the landowner had "reserve[d] the right to lay down and keep a railroad track in front of the lots adjoining the road," and thereby conveyed "an estate upon condition subsequent" rather than a fee simple estate, *Coburn* demonstrates that *Newcastle* and *Rayl* are binding for unconditional grants such as those in the Releases.  *See id.* at 560–562.

The Indiana Supreme Court again reaffirmed *Newcastle* and *Rayl* in *Douglass v. Thomas*, where it explained that "it was held in [*Rayl*] that an instrument conveying the right of way to the railroad company there concerned, supplemented by the nineteenth section of the act under which it was incorporated, did have th[e] effect" of conveying "a

fee-simple" rather than "a mere right of way." 2 N.E. 562, 563–64 (Ind. 1885).[4] The court in *Douglass* distinguished *Rayl* by noting that there was no information in the record about the nature of the Fort Wayne & Chicago Railroad Company's charter and that, without information about the charter, it had to "construe the deed according to the terms employed in the instrument." *Id.* at 564. *Douglass* thus supports the binding nature of *Newcastle* and *Rayl* as to the effect of the Charter and similarly worded charters. *See also Meyer v. Pittsburgh, C., C & St. L. Ry. Co.*, 113 N.E. 443, 445–46 (Ind. App. 1916) (citing *Newcastle* and *Coburn* and noting that "the question of the title acquired by relinquishment or condemnation under the act is not an open one" because "in the absence of a contract to the contrary, the lands involved are acquired in fee"). Indiana courts have consistently recognized *Newcastle* and *Rayl* are clear and controlling binding precedent, albeit limited to cases like this one with unconditional releases governed by particularly worded charters.

In sum, we conclude that, under Indiana law, the Releases here conveyed fee simple titles.

B.

Appellants ask this court to certify to the Indiana Supreme Court the question of the scope of the Releases' conveyance. Appellants' Br. 27–33, 52. We decline to do so.

The presence of clear, binding Indiana law precludes Appellants' request for certification. The Indiana Supreme Court accepts certified questions only when "it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent."

---

[4]    *Douglass* contains a typo: it refers to "*Rayl*" as "*Rage*" but cites the holding and case number of *Rayl*. 2 N.E. at 563.

Ind. R. App. P. 64; *see Cedar Farm, Harrison Cnty., Inc. v. Louisville Gas & Elec. Co.*, 658 F.3d 807, 813 (7th Cir. 2011) (describing lack of clear controlling precedent as a requirement for certification to the Indiana Supreme Court). This court has similarly emphasized that we do not certify questions absent "real doubt about the state's law on one or several of the issues to be decided." *Toews v. United States*, 376 F.3d 1371, 1380 (Fed. Cir. 2004); *see also id.* at 1381 ("[C]ourts have a duty to decide the cases before them whenever it reasonably can be done. Basic fairness, avoidance of unwarranted delay and the imposition of additional costs on the parties, and conservation of judicial resources, all dictate that we should decide . . . case[s] . . . on the law [when] we can."); *cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) ("Novel, unsettled questions of state law . . . are necessary before federal courts may avail themselves of state certification procedures.").

The question before this court, according to Indiana courts, is "not an open one." *Meyer*, 113 N.E. at 445–46. Even if we were to characterize Appellants and *Amici* as arguing that the Indiana Supreme Court could overturn *Newcastle* and *Rayl*, the "purpose of certification is to ascertain what the state law is, not, when the state court has already said what it is, to afford a party an opportunity to persuade the court to say something else." *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976); *accord* Wright & Miller 17A Federal Practice and Procedure § 4248 (2024) ("If the state court has already said what the law is, a federal court . . . should not certify a question in the hope of persuading the state court to change its mind."); *City of Houston v. Hill*, 482 U.S. 451, 471 (1987) ("It would be manifestly inappropriate to certify a question in a case where, as here, there is no uncertain question of state law . . . . A federal court may not properly ask a state court if it would care in effect to rewrite a statute."). Moreover, the Indiana Supreme Court affords special force to *stare*

*decisis* where, as here, "disturb[ing] the prior ruling would probably affect real property and vested rights." *Nash Eng'g Co. v. Marcy Realty Corp.*, 54 N.E.2d 263, 268 (Ind. 1944); *accord Arizona v. California*, 460 U.S. 605, 620 (1983) ("Our reports are replete with reaffirmations that questions affecting titles to land, once decided, should no longer be considered open."), *decision supplemented*, 466 U.S. 144 (1984). Appellants' request to certify a question fails because the Indiana Supreme Court has said what the law is: the Releases conveyed fee simple titles to the Peru and Indianapolis Railroad Company.

For the reasons stated, we decline to certify the question of the scope of the Releases' conveyance to the Indiana Supreme Court.

## IV. CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the above reasons, we affirm the judgment of the Court of Federal Claims.

**AFFIRMED**