# United States Court of Appeals for the Federal Circuit

---

**ROBERT A. PRESSLY, ET AL.,**
*Plaintiffs*

**JASON BREHM, ET AL.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2024-1823

---

Appeal from the United States Court of Federal Claims in Nos. 1:18-cv-01964-MMS, 1:19-cv-01375-MMS, Senior Judge Margaret M. Sweeney.

---

Decided:  April 30, 2026

---

MICHAEL JAMES SMITH, Stewart, Wald & Smith, LLC, St. Louis, MO, argued for plaintiffs-appellees.  Also represented by STEVEN WALD.

JOHN KENNETH ADAMS, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellant.  Also represented by AMBER BETH BLAHA, ADAM R.F. GUSTAFSON.

————————————

Before MOORE, *Chief Judge*, CHEN and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

This appeal arises from a rails-to-trails land conversion in Indiana carried out under the National Trails System Act Amendments of 1983 (the "Trails Act"). Plaintiffs-Appellees own land adjacent to rail corridors on which the Peru and Indianapolis Railroad Company ("PIRC") historically operated a railroad. Before the Court of Federal Claims, Plaintiffs asserted that they also own the land underlying the rail corridors. On that basis, they argued that the Surface Transportation Boards's ("STB") issuance, to PIRC's successors-in-interest, of Notices of Interim Trail Use ("NITUs") – which authorize conversion of the rail corridors for public trail use – constituted a taking of their property without just compensation, in violation of their rights under the Fifth Amendment.

The Court of Federal Claims agreed with Plaintiffs. It determined that PIRC's interests in the rail corridors were limited to easements, which were extinguished when PIRC ceased operating the railroad, thereby causing fee simple title of the land parcels to revert to Plaintiffs under Indiana law. Hence, the court reasoned, the government's issuance of NITUs to PIRC's successors, and the plan to use the corridors for trails without providing just compensation to Plaintiffs, resulted in an unconstitutional taking.

The government now appeals. It argues that the Court of Federal Claims erred by determining that PIRC held easements, rather than fee simple title, in the land underlying the corridors at issue. Because the record demonstrates that PIRC's interests in the corridors were limited to easements, and Plaintiffs hold fee simple title to the land underlying those corridors, we affirm.

I

Under the Trails Act, railroad operators may, upon discontinuing rail service, opt to convert their rail corridors to trails rather than abandon them altogether. *See* National Trails System Act Amendments, Pub. L. No. 98-11, § 208(2), 97 Stat. 42, 48 (1983) (codified at 16 U.S.C. § 1247(d)). A railroad operator wishing to pursue such a conversion must seek abandonment authorization from the STB. *See* 16 U.S.C. § 1247(d); 49 U.S.C. § 10903. When a railroad does so, potential trail sponsors may file a request with the STB expressing interest in establishing an interim trail, subject to the potential restoration of rail use in the future. *See* 49 C.F.R. § 1152.29(a)-(c). If the railroad operator agrees to interim trail use, STB will issue an NITU. *See id.* at § 1152.29(d)(1).

"When an NITU is issued and state law . . . interests that would otherwise take effect pursuant to normal abandonment proceedings are forestalled," an unconstitutional Fifth Amendment taking has occurred, unless the holder of the interest receives just compensation. *Caldwell v. United States*, 391 F.3d 1226, 1236 (Fed. Cir. 2004). For example, a taking occurs when a railroad holds only an easement[1] for railroad purposes that would, under state law, be extinguished upon cessation of railroad operations, yet an NITU creates an easement for trail purposes, preventing the fee title to the underlying corridor – which the

---

[1] "[A]n *easement* merely gives the grantee the right to enter and use the grantor's land for a certain purpose, but does not give the grantee any possessory interest in the land. . . . Because the grantor of an easement has not transferred his estate or possessory interest, . . . [h]e retains all his ownership interest, subject to an easement." *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 105 n.4 (2014) (emphasis added).

landowner holds subject to the railroad easement – from becoming unencumbered upon abandonment. If, however, the railroad company holds fee simple title[2] to the land over which the railroad operated, no taking can occur because no third party holds underlying fee simple title that would otherwise become unencumbered upon the railroad's abandonment of operations.

Here, Plaintiffs allege that STB's issuance of NITUs resulted in unconstitutional takings. In order to prevail on those takings claims, Plaintiffs need to prove that (1) they owned the parcels of land comprising the rail corridors in fee simple; and (2) (a) the railroads' interests were limited to easements for railroad purposes or (b) if those easements were instead broad enough to encompass trail use, the easements had already terminated prior to the issuance of the NITUs, such that the NITUs encumber Plaintiffs' fee simple title. *See Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc). In the Court of Federal Claims, the government disputed Plaintiffs' showing only with respect to the contention that Plaintiffs hold fee simple title to the contested parcels, subject to the railroads' property interests, which Plaintiffs insist consisted of easements. On cross-motions for summary judgment, the Court of Federal Claims concluded that the only finding the evidence could reasonably support was that Plaintiffs were correct.

Two sets of land parcels are at issue in this appeal: (i) those whose ownership depends on interpretation of a 1907 Indiana Circuit Court quiet title judgment, which we, like the parties, call the "*Manship* Decree" (and the

---

[2]    "Fee simple," or "title in fee simple," "enables the owner to exercise absolute and exclusive control of it as against all others." *Adams v. Henderson*, 168 U.S. 573, 580 (1897).

pertinent parcels the "Manship Parcels");[3] and (ii) those whose ownership relates to a deed, the "Vanlaningham Instrument" (relating to the "Vanlaningham Parcels").[4] The only issue we must decide is whether the Court of Federal Claims erred in granting summary judgment that Plaintiffs hold fee simple title in both the Manship and Vanlaningham Parcels.

The Court of Federal Claims had jurisdiction under 28 U.S.C. § 1491(a)(1). We have jurisdiction under 28 U.S.C. § 1295(a)(3). For the reasons we explain below, the trial court correctly granted summary judgment for Plaintiffs.

II

We review a grant of summary judgment by the Court of Federal Claims de novo. *See Barlow v. United States*, 86 F.4th 1347, 1353 (Fed. Cir. 2023). Summary judgment is appropriate only where, when drawing all reasonable inferences in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See id.*

"Whether a taking has occurred is a question of law based on factual underpinnings." *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1169 (Fed. Cir. 2018). The acquisition of property rights is governed by the law of the

---

[3]    The Manship Parcels have been labeled by the parties and the trial court as 1a-b, 56, 83, 93, 109a-b, 110, 124, 130, 151, 153, 215, 216, 249, 270a-e, 278, and 290. The parties agree that Plaintiffs' takings claims with respect to all of these parcels can be resolved together.

[4]    The Vanlaningham Parcels are all part of the rail corridor segment demarcated as valuation parcel V9-2/6. The parties agree that Plaintiffs' takings claims with respect to all of these parcels can be resolved together.

state in which the property sits. *See Hash v. United States*, 403 F.3d 1308, 1312, 1315 (Fed. Cir. 2005). In Indiana, "[t]he language used in a grant to a railroad controls the nature and extent of the interest acquired by it." *Consol. Rail Corp. v. Lewellen*, 666 N.E.2d 958, 962 (Ind. Ct. App. 1996). When reviewing the language in an Indiana deed to a railroad, the grant "is to be construed in its entirety and the parts are to be construed together so that no part is rejected." *Id.*

## III

We begin with the Manship Parcels. In 1907, the Indiana Circuit Court resolved a quiet title action brought by Lake Erie and Western Railroad against "Noah G. Manship et al." J.A. 1098-124. The resulting "*Manship* Decree" recognizes the railroad's property interest in the rail corridor at issue (an interest whose exact nature is disputed on appeal) and quiets the abutting landowners' claims to a competing interest. Plaintiffs' takings claims with respect to the Manship Parcels turn on the precise nature of the property interest the *Manship* Decree recognized the railroad as having in those parcels. Plaintiffs, who are successors-in-interest to the landowners in *Manship*, can prevail on their takings claims only if the *Manship* Decree recognized the railroads as holding a mere easement in, rather than fee simple ownership of, the land over which they were operating. Drawing all reasonable inferences in favor of the government as non-movant, our de novo review leads us to agree with Plaintiffs and the Court of Federal Claims that the *Manship* Decree recognized the railroads held only an easement.

The *Manship* Decree recites the following findings of fact:

> 4. . . . [P]rior to the year 1852, said Peru and Indianapolis Railroad Company located and constructed said line of railroad from Peru to Indianapolis, and as so located and constructed the

same passed through the northeast quarter of section one, in township seventeen north, range four east, in Hamilton County, Indiana, running in a straight line south 27 degrees west through said entire quarter section.

5.  At the time said railroad was so located and constructed, said quarter section of land was a forest and wholly unimproved, and said railroad company entered upon and cut and removed the timber from a strip of ground forty feet in width on each side of the center line of the railroad track so located entirely across said quarter section, and constructed and maintained a single track railroad in the center of said strip, and the same has ever since been maintained and operated on the same line . . . .

8.  On the 2nd day of June 1880, one J.C. Kimberlin was the owner in fee of all the said north east quarter of said section one except such portions thereof and such rights and interests therein as were held by the said Indianapolis, Peru and Chicago Railroad Company for its railroad and *right of way* aforesaid . . . .

27. That the plaintiff [railroad] and its predecessor railroad companies ever since the location and construction of said line of railroad as aforesaid by said Peru & Indianapolis Railroad Company have *continuously and successively and for more than forty years operated said line of railroad* and here had the *continuous and uninterrupted use* of all the ground on each side thereof through said entire quarter section for right of way between the fences along the boundaries thereof located as in this finding set forth, and have been in *the open use and occupancy* of the same *for railroad purposes* to the full width of 39 to 40 feet on each side of the

centerline of said main track for more than twenty years prior to the commencement of this suit under claim of right . . . .

J.A. 14-15 (emphasis added).

The *Manship* Decree also announces the following conclusion of law:

It is therefore considered, adjudged and decreed by the Court that *the plaintiff [railroad] is the owner in fee simple*, and its title be and the same is hereby quieted as against the defendant, Noah G. Manship, or any person claiming through, from or under him*, to the following described real estate . . . , to wit,–*

– Its right of way . . . .

*Id.* at 15 (emphasis added).

The government, emphasizing the *Manship* Decree's language that the railroad "is the owner in fee simple," insists that the Indiana court recognized PIRC's predecessors held "fee simple absolute" in the segments of rail corridor at issue in the *Manship* quiet title action. Open. Br. at 8. According to the government, the Court of Federal Claims erred by failing to accord full faith and credit to this state court judgment. The government further asserts that claim preclusion and issue preclusion estop Plaintiffs from claiming any interest in the Manship Parcels, since those claims were resolved by the quiet title action that resulted in the *Manship* Decree.

We are not persuaded. As the Court of Federal Claims explained, reading the *Manship* Decree against the backdrop of Indiana property law as it existed in 1907 confirms that the Indiana court concluded that the railroad's interest was limited to an easement in the segment of land comprising PIRC's rail corridors.

The *Manship* Decree states that "the [railroad] is the owner in fee simple . . . [to the] described real estate . . . to wit, – *Its right of way*." J.A. 15 (emphasis added). The phrase "'right of way' has a two-fold signification:" it is sometimes used to describe a right of passage over a tract of land, but it can "also [be] used to describe [the] strip of land which railroad companies take upon which to construct their road-bed." *Joy v. City of St. Louis*, 138 U.S. 1, 44 (1891). In other words, when one has interest in a "right of way," one may hold a property interest either in an easement (to use the land for a particular purpose) or in the segment of land itself. The government seizes on the *Manship* Decree's reference to "owner[ship] in fee simple" to argue that the decree must be using "right of way" in the latter sense and, thus, must have recognized the railroad's fee simple title to the land upon which it operated.

In Indiana, however, "[t]he general rule is that . . . reference to a right-of-way in [a deed to a railroad] generally leads to its construction as conveying only an easement." *Brown v. Penn Cent. Corp.*, 510 N.E.2d 641, 644 (Ind. 1987); *see also Ross, Inc. v. Legler*, 199 N.E.2d 346, 348 (Ind. 1964) ("A deed, when the interest conveyed is defined or described as a 'right of way,' conveys only an easement in which title reverts to the grantor, his heirs or assigns upon the abandonment of such right-of-way."); *Tazian v. Cline*, 673 N.E.2d 485, 489 (Ind. Ct. App. 1996) (same in case involving interpretation of deed from 1873). The *Manship* Decree's use of the phrase "in fee simple" does not carry the weight the government asserts, as at the time of the *Manship* Decree (and now) Indiana law provided that one could hold a fee simple interest in an easement. *See Calumet Nat'l Bank v. AT&T*, 682 N.E.2d 785, 788 (Ind. 1997) (finding railroad owned "fee simple interest in [a] right-of-way"); *see also Branson v. Studebaker*, 33 N.E. 98, 104 (Ind. 1892) ("[N]or is there anything novel or strange in the doctrine that there may be a fee in an easement, for an easement is an estate in land."). Furthermore, the

*Manship* Decree expressly described the railroads' use of the at-issue land as being "for railroad purposes." J.A. 15. Indiana law is clear that when a property grant to a railroad includes the term "for railroad purposes" it is typically construed as "specific language limiting the grant of the property to an easement." *Tazian*, 673 N.E.2d at 489.

Additionally, had the Indiana court issuing the *Manship* Decree intended to recognize fee simple ownership in the railroad, the court would have had no reason to make findings of fact to the effect that the railroad obtained a property interest by virtue of having *"continuously and successively* and for *more than forty years* operated said line of railroad and here had *the continuous and uninterrupted use* of all the ground on each side thereof," which is quintessential language describing adverse possession. J.A. 15 (emphasis added); *see also id.* ("have been in the *open use and occupancy* of the same for railroad purposes . . . *for more than twenty years* prior to the commencement of this suit") (emphasis added); *see also May v. Dobbins*, 77 N.E. 353, 354-55 (Ind. 1906) (discussing elements of adverse possession). Under Indiana law, a railroad can only acquire an easement, not fee simple ownership, by adverse possession. *See Consumers' Gas Tr. Co. v. Am. Plate Glass Co.*, 68 N.E. 1020, 1021 (Ind. 1903) ("[I]f [a railroad] enters without title and constructs its main line . . . nothing more than an easement is acquired.").[5]

---

[5] The government's reliance on *ATS Ford Drive Investment, LLC v. United States*, 136 F.4th 1066 (Fed. Cir. 2025), is misplaced. *See* Appellant's Citation of Supplemental Authority, ECF No. 60. In *ATS Ford*, 136 F.4th at 1070, the court held that certain conveyances labeled "Releases" transferred fee simple estates based on the plain language of the railroad's charter, which expressly provided that land acquired through release or condemnation

To the extent there were any remaining doubt, Indiana public policy supports finding that the interests held by PIRC's predecessors, as recognized in the *Manship* Decree, were easements and nothing more. As the Supreme Court of Indiana stated in *Ross*, 199 N.E.2d at 348:

> Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes, either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of all the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs and assigns [and against the railroads].

As applied here, these principles of Indiana law provide that any ambiguity in the interest or title conveyed by an instrument to a railroad is construed in favor of Plaintiffs, the adjacent landowners, as having retained fee simple title in the Manship Parcels.

Thus, we agree with the Court of Federal Claims that PIRC held only an easement in the Manship Parcels, leaving Plaintiffs as the holders of fee simple title to the

---

would vest in fee simple. By contrast, the land here was acquired through adverse possession, not by release or condemnation, making *ATS Ford* inapposite.

underlying corridor, title that became fully unencumbered upon the cessation of the railroad's operations. It follows, then, that Plaintiffs established their ownership of the land segments at issue and, because no other elements of their claims are contested, they have proven a taking. Accordingly, we affirm the Court of Federal Claims' judgment for Plaintiffs as to the Manship Parcels.[6]

### IV

We turn next to the Vanlaningham Parcels. Once again, we reach the same conclusion as the Court of Federal Claims: Plaintiffs are entitled to summary judgment on their takings claims.

### A

In 1913, Congress enacted the Federal Valuation of Common Carriers Act, which required the Interstate Commerce Commission ("ICC"), the predecessor to the STB, to "investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to" the Act. Acts of March 1, 1913, ch. 92, 37 Stat. 701. These reports were required to include, among other information, "the grants of land to any such common carrier." *Id.* at 702. To enable the ICC to meet this obligation, the agency required railroad companies to submit valuation schedules

---

[6] The government's full faith and credit and preclusion arguments, as well as its criticism of the Court of Federal Claims' purported reliance on "a later Indiana court of appeals decision in a different case involving a different railroad and a different corridor," Open. Br. at 13-14, 18-19 (citing *Meyer v. Pittsburgh, Cincinnati, Chi. & St. Louis Ry. Co.*, 113 N.E. 443 (Ind. Ct. App. 1916)), are all premised on the *Manship* Decree having granted the railroad fee simple title in the Manship Parcels, rather than an easement. As that premise is flawed, the government's arguments necessarily lack merit.

and maps that identified, as pertinent here, whether the railroad's corridors were owned by the railroad via deeds, came to be possessed by the railroads through adverse possession, or were instead "not owned." J.A. 21.

With respect to the Vanlaningham Parcels, PIRC's ICC valuation schedules noted: "[d]eed to this parcel has been lost but mention is made of it in Complaint in Gen. Atty. file 3025." J.A. 1091. Plaintiffs and the government agree that the "deed" referenced in this entry is "an unknown type of instrument executed by Carlisle Vanlaningham in 1849;" that is, the Vanlaningham Instrument. Open. Br. at 10; *see also* Resp. Br. at 33 (describing Vanlaningham Instrument as "an 1849 instrument with Carlisle Vanlaningham as grantor").

### B

As we have already explained, Plaintiffs, in order to prevail on their takings claims, need to "prove that [their] state law . . . interests in the property at issue are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Chi. Coating*, 892 F.3d at 1170 (internal quotation marks and alteration omitted); *see also Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013) (explaining that takings plaintiffs must "identif[y] a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking"). As to the Vanlaningham Parcels, Plaintiffs seek to prove their fee simple ownership interests by invoking Indiana's "centerline presumption." J.A. 26-27.

Indiana's centerline presumption provides that where "a deed [to the rail corridor] . . . does not exist, then the railroad's interest vests in the owner of the adjoining fee . . . for the part of the right-of-way from the center line of the right-of-way to the adjoining property line."

Ind. Code § 32-23-11-10(c).[7] Plaintiffs contend that they may rely on the centerline presumption, notwithstanding the Vanlaningham Instrument, because the Vanlaningham Instrument is a lost deed whose contents cannot be proven and, therefore, should be treated as if it does not exist.

The government attempts to refute Plaintiffs' contention on several bases. First, the government insists that Plaintiffs have failed to prove that the Vanlaningham Instrument is lost. Second, the government argues that even if the Vanlaningham Instrument is lost, it indisputably exists, and the centerline presumption does not apply where a deed exists. Third, again assuming the Vanlaningham Instrument is lost, Plaintiffs failed to take advantage of the resulting opportunity to prove its contents, leaving the record devoid of evidence that the railroads held only an easement, thus resulting in Plaintiffs failing to meet their burden of proof. We disagree with the government's reasoning, as we explain below.

1

We first address the government's argument that Plaintiffs failed to establish that the Vanlaningham Instrument is lost. Whether a deed is lost controls whether parol evidence of its contents is admissible; it does not independently establish what the deed actually conveyed. *See Howe v. Fleming*, 24 N.E. 238, 238 (Ind. 1890) ("To entitle a party to give parol evidence of the contents of a paper alleged to be lost, it is incumbent upon him to show that a diligent and careful search was made at the proper places, and by the proper persons, and that it could not be found.").

---

[7] Indiana Code § 32-23-11-10(b) defines such a deed as one "that contains a description of the real property that includes the right-of-way." We presume, as the parties do, that the Vanlaningham Instrument meets this definition.

Because, here, neither party has attempted to prove the contents of the Vanlaningham Instrument through parol evidence, it is arguably unnecessary to determine if Plaintiffs proved that the deed is lost. Nevertheless, assuming Plaintiffs were required to establish the Vanlaningham Instrument is lost, we agree with the Court of Federal Claims that Plaintiffs did so.

Under Indiana law, a party seeking to show that a deed has been lost must prove that the deed once existed, and that a bona fide and diligent search for the deed has been undertaken but failed to locate it. *See Thompson v. Thompson*, 9 Ind. 323, 333 (Ind. 1857). The existence of the Vanlaningham Instrument is not in dispute; it is established by the ICC valuation schedules, which note the instrument "has been lost." J.A. 1091; *see also* Open. Br. at 29 ("There is no dispute that the Vanlaningham [I]nstrument once existed.").

The government questions Plaintiffs' showing as to the required bona fide, diligent search for the deed, pointing out that Plaintiffs themselves never searched for the Vanlaningham Instrument in the pertinent county recorder's office, "the place where it was most likely to be found," *Thompson*, 9 Ind. at 333. Open. Br. at 29 (citing Ind. Rev. Stat. ch. 28, § 25 (1843)). "Where a paper which the law requires to be filed and kept by a public officer as part of the records or papers of his office is alleged to be lost, the court has a right to require, before receiving parol evidence of its contents, that careful and diligent search was made in the office, and by one so fully acquainted with the office, records and papers, as to make it probable that, if the paper was in the office he would find it." *Howe*, 24 N.E. at 238. We agree with the Court of Federal Claims that there is, however, "no requirement that the bona fide and diligent search be performed by the party seeking to have a conveyance instrument declared lost," J.A. 24-25 (internal quotation marks omitted), so long as the search is conducted "by one so fully acquainted with the office,

records, and papers" as to make it likely he or she would find it, *Howe*, 24 N.E. at 238.

Plaintiffs were therefore entitled to rely on the search PIRC is presumed to have undertaken before PIRC declared to the ICC that the Vanlaningham Instrument was lost. To avoid potential liability for making a false statement to a federal agency, PIRC is presumed to have complied with its obligation under the law to have made a reasonable, diligent search justifying its representation that the Vanlaningham Instrument was lost. *See United States v. Norton*, 97 U.S. 164, 168-69 (1877) ("It is a presumption of law that officials and citizens obey the law and do their duty."). Additionally, Plaintiffs issued subpoenas for the Vanlaningham Instrument to PIRC's successors-in-interest. J.A. 431-688. This reasonable effort also failed to result in production of the deed. Thus, we discern no error in the Court of Federal Claims' conclusion that, under Indiana law, the Vanlaningham Instrument is a lost deed. J.A. 25; *see also generally Barlow*, 86 F.4th at 1358-59 (applying Illinois law and concluding that takings plaintiffs proved deed to railroad was lost based on "evidence of a diligent search, including valuation schedules, written requests, and subpoenas to acquire documents related to [a railroad's] acquisition of use rights").

2

Next, the government argues that even if the Vanlaningham Instrument is lost, it nonetheless exists, depriving Plaintiffs of the ability to rely on the centerline presumption which, according to the government, is only available when no deed exists. Plaintiffs counter that the scope of Indiana's centerline presumption is not so circumscribed. In their view, the presumption applies and is only "rebutted if there is proof that the fee is in possession of another." Resp. Br. at 44. We agree with Plaintiffs.

In 1865, the Supreme Court noted "[i]t is a familiar principle of . . . law, that a grant of land bordering on a road

or river, carries the title to the centre of the river or road, *unless the terms or circumstances of the grant indicate a limitation of its extent* by the exterior lines." *Banks v. Ogden*, 69 U.S. 57, 68 (1865) (emphasis added). Indiana's centerline presumption is in accord with this general understanding and applies "unless a contrary intention is manifest from the grant or conveyance itself." *Irvin v. Crammond*, 108 N.E. 539, 540 (Ind. Ct. App. 1915) ("A grant or conveyance of land bounded by a nonnavigable stream carries with it the bed of the stream to its center, *unless a contrary intention is manifest* from the grant or conveyance itself.") (emphasis added); *see also McDonald v. Payne*, 16 N.E. 795, 796-97 (Ind. 1888) ("Ordinarily, it is true, the line described . . . in giving the course of a public highway . . . is presumed to be the center line of the highway, but this presumption may be excluded by the very description itself, in case that *shows a contrary intent*.") (emphasis added). The government has not directed us to any provision of Indiana law that would limit this proposition to land abutting nonnavigable streams and highways and preclude it from applying to land abutting a railroad; nor have we ourselves found any support for such a restriction.

Therefore, the mere existence (at one time) of the Vanlaningham Instrument does not overcome the centerline presumption and, hence, does not defeat Plaintiffs' reliance on that presumption.

3

This brings us to the government's final argument. The government contends that, even assuming the Vanlaningham Instrument is a lost deed and its one-time existence does not deprive Plaintiffs of the benefit of the centerline presumption, Plaintiffs were still required to produce evidence of the contents of the Vanlaningham Instrument in order to prove that PIRC's interest in the

Vanlaningham Parcels consisted of only an easement. Once again, we disagree with the government.

In Indiana, "where a party has the burden of proof upon a given issue and a presumption . . . arises in his favor . . . such presumption will prevail in his favor until it is met and rebutted by evidence." *North v. Jones*, 100 N.E. 84, 87-88 (Ind. Ct. App. 1912). Here, because Plaintiffs were properly permitted to rely on the centerline presumption to establish their property interests, and because Indiana law provides that the centerline presumption is only displaced by evidence of a "contrary intention" in the relevant deed, it was the government that had to produce evidence of the contents of the Vanlaningham Instrument in order to meet *its burden* to rebut the centerline presumption. *See Irvin*, 108 N.E. at 541.

As the Indiana Court of Appeals stated in *W. Union Tel. Co. v. Krueger*, 74 N.E. 25, 26 (Ind. Ct. App. 1905), a party seeking to establish fee simple title as against an abutting landowner invoking the centerline presumption must point to something "in the evidence . . . which necessarily overcomes the presumption that the [abutting landowner is] the owner in fee simple to the center line." In that case, the Indiana court found owners of land abutting a highway proved, based on the centerline presumption, that they held a fee simple interest in the land to the center of the highway, notwithstanding the existence of a deed, as the challenging party did not establish that the deed unambiguously conveyed fee simple ownership of the contested land to it. *See id.*

Indiana law further provides that a lost deed carries no operative legal weight unless its contents have been proven. *See Hitt v. Carr*, 109 N.E. 456, 466 (Ind. Ct. App. 1915) ("[A] lost deed, *the contents of which have been proven*, may give color of title.") (emphasis added); *see also Armstrong v. Azimow*, 76 N.E.2d 692, 693 (Ind. Ct. App. 1948) ("We are aware of the fact that extreme caution

should be exercised in decreeing the existence of a lost deed and thus establishing title to real estate. . . . [Therefore,] *the contents and execution of such a deed must be proven with reasonable certainty*.") (emphasis added). If a lost deed can have no legal effect unless its contents are proven with reasonable certainty, it follows that a lost deed whose contents remain a matter of conjecture also cannot supply the affirmative contrary intent that Indiana law requires to rebut the centerline presumption and establish fee title in a party other than the abutting landowner. *See Colton v. Lewis*, 21 N.E. 475, 476 (Ind. 1889) ("[A] court will only declare a deed void for uncertainty when, after resorting to oral proof, it still remains mere matter of conjecture what was intended by the instrument.").[8]

Neither side presented any evidence as to the contents of the Vanlaningham Instrument. Because its contents have not been proven, the instrument cannot supply the affirmative contrary intent that Indiana law requires in order for the government to overcome the centerline presumption. Indiana law does not permit us to speculate, on the government's behalf, that the contents of the lost deed clearly delineate that, contrary to the centerline presumption, PIRC's interest in the corridor was not limited to an easement. Therefore, on this record, the only reasonable conclusion to be drawn is that Plaintiffs own the land to the center of the rail corridors at issue, and PIRC's interest in the Vanlaningham Parcels was, hence, limited to an easement. Thus, Plaintiffs are entitled to judgment on their takings claims.

---

[8] Our conclusion is in line with how other states treat lost deeds. *See, e.g.*, *Barlow*, 86 F.4th at 1357-59 (applying Illinois law and holding that where contents of lost deeds were not proven by clear and convincing evidence, railroad failed to establish fee simple title and could hold, at most, an easement).

## V

We have considered the government's remaining arguments and find they lack merit.  Accordingly, we affirm the judgment of the Court of Federal Claims.

**AFFIRMED**